LUTHER BEECHER, RELATOR v. ANDREW A. ANDERSON, SHERIFF.

*Mandamus to compel service of warrant for perjury.*

In mandamus cases the party interested is permitted to be heard in resisting the application.

Prosecuting attorneys have no discretion allowed them to stop all criminal prosecutions instituted before justices of the peace ; but a justice ought seldom to hold a respondent to bail, or convict him on trial, when the prosecuting attorney advises him in good faith that no crime is made out.

A justice of the peace may properly take the advice of the prosecuting attorney before issuing a warrant, and refuse it even when the accuser can make a *prima facie* showing of a technical offense, if the prose-

45 543
69 68
45 543
75 124
45 543
82 90
45 543
137 s364
45 543
f150 6244

cuting attorney thinks that the case would fail on full hearing, or that the criminal intent was so far wanting that the cause of justice would not be advanced by the prosecution.

A prosecuting attorney can in nowise control the action of the sheriff when a writ has been placed for execution in the latter's hands ; the sheriff may take his advice if doubtful as to his duty ; but is not relieved from responsibility if he fails in his duty in following it.

A wilfully false oath in a judicial proceeding is not perjury, even if it states material facts, unless the oath itself is material to the proceeding.

The answer of a corporation to a bill in equity is not required to be sworn to, but is attested by the corporate seal. If a discovery is sought, individual corporators may be sworn, but they must be named as defendants in the bill.

Where a bill in equity, not seeking discovery, is filed against a corporation, the general manager, if not himself made a defendant, need not swear to the answer ; and if he does so in a case where his oath could not affect the issue or strengthen the answer, his oath, if false, will not sustain a complaint for perjury.

A person arrested on a defective complaint issued by a justice, is entitled to his discharge ; and the chance that it may be supplemented by facts not yet shown to the justice, will not justify a mandamus compelling the sheriff to serve it where it will be necessary to take the respondent several hundred miles for his examination.

Mandamus.   Submitted Jan. 25.   Decided April 13.

*F. A. Baker, John Atkinson, H. M. Cheever* and *J. P. Whittemore* for relator.   A warrant may be sufficient to give jurisdiction, even though it is not as full as it should be. *Boyd v. State* 17 Ga. 194; *Pratt v. Bogardus* 49 Barb. 89 ; *People v. McLeod* 1 Hill 378 ; *Atchinson v. Spencer* 9 Wend. 62 ; *Pardee v. Smith* 27 Mich. 43; *People v. Lynch* 29 Mich. 274; *Turner v. People* 33 Mich. 363; *Annis v. People* 13 Mich. 511; an answer to a bill in chancery is evidence ; *Hart v. Carpenter* 36 Mich. 402 ; and must be verified, 1 Barb. Ch. Pr. 142.

*Don M. Dickinson (Griffin & Dickinson)* for respondent.

COOLEY, J.   We are asked in this case to issue the writ of *mandamus* directed to the respondent, who is sheriff of

the county of Marquette, commanding him to serve a warrant for the arrest of one William W. Wheaton on a charge of perjury, and for his conveyance before one O'Keefe, a justice of the peace of said county, to be dealt with according to law. The facts of the case are so peculiar that it seems desirable to recite them with more fulness and particularity than is commonly deemed essential.

The warrant was issued November 25, 1879, and delivered to the sheriff on or about the tenth day of December following. The sheriff in response to the application for the writ of *mandamus* says that:

"Before the warrant was placed in his hands, respondent spoke to J. Q. Adams, prosecuting attorney for Marquette county, about the execution of the same; and said Adams told him to arrest said Wheaton, as soon as security for costs was filed with the justice.

" A short time after receiving the warrant, which was soon after such security was filed, respondent saw said Adams, told him he had the warrant, and asked him what he should do. Adams then told him that he had examined the warrant, and complaint, with said Mapes; that they were all regular and straight. But that he wanted the money put up as security, instead of a bond, and to delay the service until the money was deposited, and that one hundred and fifty dollars was the amount that he wanted.

" After a time, Luther Beecher's check, on a Detroit bank, the name of which he does not remember, was sent to respondent, payable to the order of said Adams. And said respondent thinks the same was certified, but is not positive. But there was a condition written on the check, that it was given to secure the bond filed. This was not satisfactory to said Adams. He wanted the money deposited with the county clerk, to indemnify the county against loss, and told respondent, that as soon as he (respondent) became satisfied that the money was deposited, that he should make the arrest.

" Respondent returned the check to the drawer of the same, and then the money was deposited.

" When respondent became satisfied that the money was deposited, he went to Detroit, and arrested said Wheaton, on or about the sixth day of February, A. D. 1880, in a store, near the city hall, at about ten o'clock in the forenoon. That he went from there to the office of Griffin & Dickinson, attorneys, with said Wheaton, at his request, where they saw

45 MICH.—35.

both of said attorneys. The attorneys told said respondent, and said Wheaton, that respondent could not take him through another State, to reach Marquette county, and told Wheaton to use violence in resisting any detention after leaving this State.

" Respondent then told Wheaton and his attorneys that if he could not take him through another State, he would have to take him through Michigan, by way of Mackinac.

" They then proposed to give bonds for the appearance of Wheaton, at Marquette. Respondent and his advisers were uncertain whether such bonds could be accepted; and Mr. Griffin went off, as he said, to consult one of the judges of the Supreme Court; returned, after a time, and said that the judge was of the opinion that the statute did not provide for such cases, but that the common law might include such a case, and protect the sheriff. This was on Friday. Wheaton then agreed to give bonds the next day for his appearance in Marquette. The next day he refused to give bonds, and respondent told him he should start with him for Marquette that evening. Then his attorneys suggested, that if respondent would stay in Detroit, until the next Tuesday, they would pay his expenses, and then they, and respondent and his attorney, would go to Lansing, where the Supreme Court would be in session. A writ of *habeas corpus* should be sued out, served on respondent, and a hearing had in the matter at once. This was agreed to by all concerned, and all separated.

"About eleven o'clock Saturday night, respondent received, at the Michigan Exchange, a note from A. H. Mead, stating that 'Mr. John Q. Adams, of Negaunee, is at the Russell House. If you would like to see him, you can meet him there.' Respondent started at once for the Russell House, and met said Wheaton on the sidewalk, in front of the same. Wheaton had before this told respondent, that he thought Adams did not know anything about the matter. And when they met on the street, Wheaton said : 'Did not I tell you that Adams did not know anything about it, and that you were not acting under his advice.' Respondent then said : 'Either you or Adams are liars,' and asked where Adams was. Wheaton said he was up in the hotel. Wheaton and respondent went up and saw Adams. Adams then told respondent that he had agreed to release Wheaton, on condition that Wheaton would appear at Marquette, at any time that Adams would call for him. Respondent told Adams of the agreement he had made with Wheaton and his attorneys

to go to Lansing on the following Tuesday, and that he was not willing to release Wheaton, unless he (Adams) took all the responsibility of the matter upon himself, and that he would see that respondent was paid back the money expended, and for time lost. Adams said he would do so—that he took all responsibility upon himself, and that he had authority, as prosecuting attorney, to do so. Respondent then released Wheaton, and went home. Respondent further says, that he acted in the matter entirely under the instructions of J. Q. Adams, as prosecuting attorney, and that if said Adams had not interfered, respondent would have taken said Wheaton to Lansing, and before the Supreme Court, if a writ of *habeas corpus* had been procured, and if he had not been released, or a bond given, would have brought him before the justice, as by said warrant he was commanded. Respondent has been ready and willing, at all times, to execute said warrant, if not interfered with, and has no other cause to show in this matter than as hereinbefore stated."

It thus appears that the respondent raises no question of the sufficiency of the warrant, and that he declines to serve it for no other reason than that the prosecuting attorney of the county instructs him not to do so. His recital of facts makes out a somewhat extraordinary case of interference on the part of the prosecuting attorney, but it is possible that if we had his explanation it would assume a somewhat different aspect. In *mandamus* cases, however, the party interested is permitted to be heard in resisting the application, and in this case the counsel for Mr. Wheaton have not only contended that the sheriff was justified in obeying the direction of the prosecuting attorney, if not bound to obey it, but they have insisted further that the warrant was invalid, so that the sheriff would have been a trespasser had he assumed to execute it. This last is the point mostly relied upon.

It is not claimed—nor can it be with any plausibility— that the prosecuting attorney has a right at discretion to stop all criminal prosecutions instituted before justices of the peace. The statute gives no such power. It requires him to " appear for the State or county, and prosecute or defend in all the courts of the county, all prosecutions, suits, applications, and motions whether civil or criminal, in which the State or county may be a party or interested." Comp.

L. § 529. But by "the courts of the county" is evidently intended the courts of record only; for by the next section he is required to appear to prosecute complaints before a magistrate only when the magistrate requests it. No doubt when he appears the magistrate should govern his official action somewhat by his advice: he certainly ought very seldom to hold a party to bail or to convict him on trial when the prosecuting attorney in good faith advises him that no crime is made out. It would be proper, also, in many cases that he should seek the advice of the prosecuting attorney in advance of the issue of any warrant, and refuse a warrant even when the complainant is able to make *prima facie* showing of a technical offense, if the prosecuting attorney is of opinion that the case would fail on full hearing, or that the criminal intent was so far wanting that the cause of justice would not be advanced by the prosecution.

But in this case it does not appear that the magistrate had called upon the prosecuting attorney for his assistance. A warrant had been issued and placed in the hands of the sheriff, and if it was valid in point of law, it had become the duty of the sheriff to execute it. The action of the sheriff could not in any manner be restrained or controlled by the prosecuting attorney; he might with great propriety take his advice in a case where he was in doubt what his duty required of him, but if the advice proved to be erroneous, it would not relieve him from responsibility if, in following it, a duty enjoined by law failed of performance.

We must see, then, whether the sheriff in this case had in his hands a warrant which it was his clear duty to obey.

The warrant recited that one John Simmons had made complaint to the justice in writing and on oath

"That heretofore, to wit, on the 10th day of September, A. D. 1878, at the city of Marquette in the county aforesaid, Luther Beecher did exhibit his bill of complaint in writing against the Marquette & Pacific Rolling Mill Company, a corporation organized and existing under the general mining and manufacturing laws of the State of Michigan and doing business in the said county of Marquette, and

having its office for the transaction of business located in the city of Marquette in said county—said corporation in said bill being more particularly described in the circuit court for the county of Marquette in chancery. And the said Luther Beecher in and by his said bill of complaint, among other things stated and alleged in substance, and to the effect following, to wit:

"That he, the said complainant, was a stockholder and owner of a portion of the capital stock of said corporation defendant. That said defendant was, and for a long time previous thereto had been, carrying on the business of mining and selling iron ore, having its works and mines in said county of Marquette; and had in its employ a large number of laborers, workmen and servants, for hire, in and about its said business; and that the stockholders were and were becoming personally liable to such laborers, workmen and servants, for their services performed and to be performed in and about the business of said corporation; and that the said corporation was insolvent; had not and was unable to pay its laborers, workmen and servants, and was not then paying the same for the labor and services performed, and being performed, in and about the business of said defendant, as aforesaid, as in and by the said bill of complaint of the said Luther Beecher, duly verified, remaining filed of record, in the said circuit court for the county of Marquette, in chancery, among the other things more fully appears.

"That William W. Wheaton, general manager of said corporation defendant, afterwards, that is, to say, on the 16th day of September, A. D. 1878, at the city of Marquette, in the county of Marquette, aforesaid, did come, in his own proper person, before Herman E. Pearce, a notary public, in and for said county of Marquette, duly commissioned, and then and there did exhibit and produce to the said Herman E. Pearce, Esq., then and there, a notary public as aforesaid, the answer, in writing, of the said Marquette & Pacific Rolling Mill Company to said bill of complaint," "subscribed by him, the said William W. Wheaton. And the said William W. Wheaton was then and there sworn in due form of law, and took his corporal oath touching and concerning the matters stated and contained in the said answer, by and before the said Herman E. Pearce so then and there being a notary public in and for said county of Marquette, and then and there having sufficient power and authority to administer an oath to the said William W. Wheaton in that behalf, and that the said William W. Wheaton being so

sworn as aforesaid, and being then and there lawfully authorized and required to declare and depose the truth in a proceeding in a court of justice, did upon his oath aforesaid concerning the matters contained in said answer before the said Herman E. Pearce, Esq., then as aforesaid being a notary public in and for said county of Marquette, then and there swear: that the said answer was true, except as to the matters stated therein to be on information and belief, and those he believed to be true; and that the said William W. Wheaton, being so sworn, as aforesaid, intending unjustly to aggrieve the said Luther Beecher, the said complainant, as aforesaid, in his oath aforesaid, to the answer aforesaid, before the said Herman E. Pearce, Esq., being then, as aforesaid, a notary public in and for the county of Marquette, and having sufficient and competent authority, as aforesaid, falsely, knowingly, wilfully and corruptly, by his own act and consent, upon his oath aforesaid, did answer and affirm, among other things, in substance, as follows. That is to say: 'That the said defendant (meaning the Marquette & Pacific Rolling Mill Company) was not in possession (meaning in possession of the iron mine of said Marquette & Pacific Rolling Mill Company, at Negaunee, in said county,) and was not engaged in its (meaning the Marquette & Pacific Rolling Mill Company) business of mining and selling iron ore, and that said defendant (meaning the Marquette & Pacific Rolling Mill Company) did not have in its (meaning the said Marquette and Pacific Rolling Mill Company) employ in and about said business (meaning the business of mining and selling iron ore) a large number of laborers, workmen and servants (meaning persons employed by said Marquette & Pacific Rolling Mill Company in and about its business of mining and selling iron ore), for hire (meaning persons to whom money was agreed to be paid for services performed).'

" ' That the stockholders (meaning the stockholders of the Marquette & Pacific Rolling Mill Company, a corporation organized, existing and doing business under the general mining and manufacturing laws of the state of Michigan) were not becoming liable (meaning personally liable as stockholders) to any laborers, workmen or servants, for labor (meaning labor performed for said Marquette & Pacific Rolling Mill Company), or that they (meaning said stockholders) were personally liable for any labor, in case the said Marquette & Pacific Rolling Mill Company should make default in any payment of wages whatsoever.

" ' That said company (meaning the Marquette & Pacific Rolling Mill Company, defendant, as aforesaid) had no workmen, laborers or servants, belonging (meaning employed and hired) in and about said business (meaning the business of said Marquette & Pacific Rolling Mill Company, defendant) of mining iron ore, and selling the same, or any business carried on by said company (meaning said Marquette & Pacific Rolling Mill Company, a corporation, as aforesaid), for which the stockholders of said defendant (meaning said Marquette & Pacific Rolling Mill Company) could in any event become liable (meaning that no persons were employed or working as laborers for said Marquette & Pacific Rolling Mill Company, in and about its business of mining and selling iron ore), as by the said answer of the Marquette & Pacific Rolling Mill Company, defendant, still remaining on file and of record in the circuit court for the county of Marquette in chancery, aforesaid, at the city and county of Marquette aforesaid, among other things appears.' "

The recitals then negative the truth of the facts so sworn to by Wheaton, and conclude as follows : · " That the matters so falsely sworn 'to as hereinbefore stated were material to the issue made by said bill and answer. That the said William W. Wheaton falsely, wickedly and corruptly, in manner and form aforesaid, did commit wilful and corrupt perjury.

This is the complaint as it is recited by the justice in his warrant. The justice goes on to say that " on examination on oath of the said John Simmons by me the justice of the peace, it appears to me, the said justice of the peace, that said offense has been committed, and there is just cause to suspect the said William W. Wheaton to have been guilty thereof," and he thereupon commands the arrest.

Does this complaint show by its recitals a case of perjury ? If not, the sheriff may perhaps be excused for declining to serve the warrant. In considering this question, however, we shall look for no technical defects, but shall concede that if all the substantial allegations necessary to make a good complaint are to be found in this, the fact that some of them are not made with the fullness and accuracy required in indictments will be no sufficient reason for a refusal to execute the process. The question is one of substance, not of

technical precision, and it is presented to us much as it would be if the accused had been arrested, and had applied for a discharge on *habeas corpus*.

Perjury is committed " when a lawful oath is administered, in some judicial proceeding, to a person who swears wilfully, absolutely, and falsely, in a matter material to the issue or point in question." 3 Inst. 164; 4 Bl. Com. 137; *People v. Fox* 25 Mich. 492. By this is meant that the oath must be material: the facts sworn to may be material, and yet the false swearing be no perjury because the oath performed no office in the case, and was wholly unimportant and immaterial. This point is well illustrated, in the case of *People v. Fox*, just referred to. Fox was informed against for having made a false affidavit in a suit at law pending in the circuit court for the county of Branch wherein he affirmed that one of the defendants in said suit did not execute the obligation sued upon. The fact sworn to was material, but it did not appear from the information that the affidavit was made to be used in the case, or that it actually was used, or that it performed or was to perform any important office whatever in the case. It did not therefore appear that the oath was of any materiality. *People v. Gaige* 26 Mich. 30 is, if possible, still more directly in point. The alleged perjury was committed in swearing to a bill in chancery. It was averred that the facts sworn to were material, but the information did not show that the bill was one of a character required by law to be under oath, or that it was sworn to in order to be used as the foundation of any motion or other application to the court. So far as appeared, therefore, the oath was a merely idle ceremony, and its being taken in the case was of no importance. And it was held in that case that the defect in the information could not be supplied by proof showing that the bill was in fact sworn to in order that it might be used as the foundation for a motion for an injunction.

The alleged perjury in this case consists in swearing to an answer to a bill in chancery filed against a corporation. Wheaton was not a party defendant, but signed and swore to the answer as general manager of the corporation. A few

general principles, it seems to us, must govern the case. The answer of a corporation is not required to be sworn to, but is put in without oath under the corporate seal. *Wych v. Meal* 3 P. Wms. 310; *Dummer v. Chippenham* 14 Ves. 245; *Haight v. Proprietors, etc.*, 4 Wash. 601; *Vermilyeu v. Bank, etc.*, 1 Paige 37; *Baltimore etc. R. R. Co. v. Wheeling* 13 Grat. 40. If a discovery is required, individual members of the corporation may be called upon to answer under oath, but for that purpose it is necessary that they be named as defendants in the bill. *Brumly v. Westchester etc. Co.* 1 Johns. Ch. 366; *Buford v. Rucker* 4 J. J. Marsh. 551; *Dummer v. Chippenham*, supra.

The bill in this case does not appear from the complaint to have been a bill for discovery. None of the officers of the defendant corporation was made a party, and therefore none of them was placed in a position demanding from him an answer under oath. It does not appear from the complaint that the answer was to be used for any purpose for which an oath to it could be of any importance. So far as appears, therefore, the oath of Wheaton to the answer was wholly an idle ceremony. The answer was no better with it than without it; it affected the issue in no manner whatever; it strengthened no statement made by the answer, and it made no statement evidence that would not have been evidence without it, and gave no statement weight or force that it would not otherwise have possessed. As an information the complaint would therefore have been fatally defective. *People v. Gaige*, supra.

But it is said that the actual showing before the justice may have been more full, and may have disclosed the fact that the answer was to be used as evidence in some collateral proceeding or on some motion. This may be admitted, and it may also be admitted that the warrant is not so defective in its allegations as to be void. The fact remains that it is perfectly consistent with all the facts set forth in the complaint that no perjury has been committed. The application is to compel the sheriff of one of the counties in the Upper Peninsula to serve a warrant in the city of Detroit. The

distance is considerable when the most direct route can be taken, but the warrant could not have been executed at the time the application was made without taking the defendant several hundred miles through other states. When the defendant should be brought before the justice and should move for a discharge on the ground of a defective complaint, he would be entitled to it as a matter of right. Under these circumstances it seems plain that justice does not require the service of this warrant.

It is not improbable that a better complaint could be made if the defendant were to be discharged from this; but if so, it can be made now as well. Indeed it would seem that there had already been sufficient time for that purpose, for it is more than a year since this warrant was issued. We cannot compel the officer to take the defendant several hundred miles on the mere chance that papers now showing by their recitals no crime may be made complete by the proof of facts which do not as yet appear to have been put in evidence before the justice.

The writ of mandamus must be denied.

The other Justices concurred.