[Crim. No. 1463. Second Appellate District, Division One.— October 1, 1927.]

THE PEOPLE, Respondent, v. HOMER C. MILLSAP, Appellant.

Paul W. Schenck and Leo V. Silverstein for Appellant.

U. S. Webb, Attorney-General, and Frank Richards, Deputy Attorney-General for Respondent.

SHAW, J., *pro tem.* — Defendant was tried and convicted upon an indictment charging perjury and appeals

from the judgment and from an order denying his motion for a new trial. By demurrer to the indictment and also by motion in arrest of judgment he raised the point that the indictment does not state facts sufficient to constitute a public offense. The act charged as perjury was the verification of an answer in a civil action. The indictment set up in full the complaint in that action and the answer thereto. The complaint was filed in the superior court of Los Angeles County on June 22, 1922, by Ida A. Morgan Clark, as plaintiff, against Homer C. Millsap, the appellant in this case, Berenice Williams Millsap, and M. M. Investment Company, a corporation, as defendants, for the purpose of obtaining an accounting from the defendants. The indictment alleged that this complaint was verified by the plaintiff and that an answer thereto was filed on July 25, 1922, in behalf of Berenice Williams Millsap and Homer C. Millsap, individually and as trustee for M. M. Investment Company, which was verified on the same day by Homer C. Millsap. This verification is the perjury charged.

In support of his contention that the indictment does not state a case of perjury, appellant argues that no verification of the answer was required by law, and therefore a false oath made in verifying it could not be perjury. The general matter of verification of pleadings in civil actions is governed by section 446 of the Code of Civil Procedure, which reads in part as follows:

"When the complaint is verified, or when the state, or any officer of the state, in his official capacity, is plaintiff, the answer must be verified, unless an admission of the truth of the complaint might subject the party to a criminal prosecution, or, unless an officer of the state, in his official capacity, is defendant."

The complaint in this case being verified, appellant bases his claim that no verification of the answer was required upon the proposition that the complaint charged him with embezzlement and an admission of its truth would therefore subject him to a criminal prosecution. The complaint is long and complicated, alleging four causes of action. Appellant refers in support of his contention to the whole complaint and quotes with special emphasis a part of the third cause of action, in which all the facts necessary to show

an embezzlement of $20,000 of the plaintiff's money by defendant Homer C. Millsap are grouped together and concisely stated. Unfortunately for this reference, the embezzlement there alleged is stated to have occurred on September 8, 1914, whereas the verification in question was not made until July 25, 1922, nearly eight years later. There is no suggestion in the civil complaint or in the indictment that appellant was out of the state on September 8, 1914, or at any time thereafter. Hence it appears that when the verification was made the statute of limitations had run against a prosecution for the embezzlement charged in the part of the complaint now under consideration. This fact raises the question whether under the circumstances an admission of the truth of these allegations would subject appellant to a criminal prosecution. This question has not been discussed in the briefs, and decision of it is not necessary, for other allegations of the complaint are sufficient, when taken together, to charge an embezzlement occurring within the statutory period before the verification of the answer was made by appellant.

In the first cause of action the complaint alleged, among other things, the following facts: That the defendant Homer C. Millsap was at all times therein mentioned an attorney at law; that in May, 1913, the plaintiff employed him as her attorney at law; that he accepted the employment and it continued without interruption to January, 1922; that at his request and on his advice, she delivered and entrusted to him the property mentioned in the complaint for his care, supervision, and preservation for plaintiff; that in May, 1914, she owned certain cash, notes, and other property; that defendant Homer C. Millsap advised her that said property could be more easily and effectively managed if a corporation were formed and said property transferred to it; that she assented to this, and accordingly the defendant M. M. Investment Company was incorporated in June, 1914, by Homer C. Millsap; that he was at all times one of its officers and directors until it forfeited its charter in March, 1921, at which time he became, and ever since has been, a trustee for its stockholders; that plaintiff transferred the above-mentioned property to said corporation in 1914 shortly after its organization; that thereafter the corporation and Homer C. Millsap received from said property transferred

by plaintiff to the corporation, by way of rents, sales, and other collections, more than $71,201.38, the portion of said sum received by each being unknown to plaintiff; that said sum was received at dates and in amounts as follows: During the years 1914 to 1919, inclusive, $8,500, between May 12, 1914, and November 12, 1914, $25,945.83, March 3, 1915, $8,000, April 20, 1915, $2,500, February 14, 1916, $8,000, March 9, 1916, $8,000, April 21, 1920, $8,500, which was the proceeds of a sale of certain property which plaintiff had transferred to the corporation, and at unspecified dates $1,755.55; that all the property transferred by plaintiff to said corporation was the property of plaintiff, and all the money received by said defendants was at all times and now is the money of the plaintiff; that said corporation never had any business except that of obtaining, holding and selling the said property of the plaintiff under the sole and exclusive management and control of said Homer C. Millsap, and all its books and records have always been in his possession and control, and his office was its office; that during the years 1919 and 1920 the defendant Berenice Williams Millsap was the stenographer of Homer C. Millsap and received certain of plaintiff's money without plaintiff's knowledge or consent, the amount thereof being unknown to the plaintiff. Paragraphs XV and XVII of the first cause of action read as follows:

"XV. That at the time of the assignment and transfer of plaintiff's said property as aforesaid to said defendant corporation, said defendant Homer C. Millsap advised plaintiff that the moneys derived and received from the sale of said properties and each of them, would be and was invested by said defendant Homer C. Millsap in interest bearing property; that said plaintiff discovered within six (6) months last past, and not before, that her said moneys aforesaid had not been invested in any property, but on the contrary had been deposited in the personal bank account and accounts of said defendant Homer C. Millsap and by him unlawfully and fraudulently appropriated to his own uses and purposes, with the exception of certain of said moneys that said defendant paid out to plaintiff and for the care and preservation of said mining properties as aforesaid, and with the further exception of certain moneys received by said Berenice Millsap, as aforesaid.

"XVII. That said defendants have paid to plaintiff of said sum of Seventy-one Thousand Two Hundred One and 38/100 ($71,201.38) Dollars as aforesaid, the sum of Ten Thousand Nine Hundred Sixty-eight and 81/100 Dollars ($10,968.81)."

The first cause of action further alleged that plaintiff has repeatedly and from time to time demanded of the defendants an accounting and the return and payment to her of her money, and has demanded such accounting since February 5, 1922, no other dates of such demands being stated; that defendant Homer C. Millsap promised to account, but has failed, neglected, and refused to do so; that plaintiff is not indebted to any of the defendants in any amount; and that there is due, owing, and unpaid to her from defendants approximately $60,232.57.

In the fourth cause of action the plaintiff alleged that defendants are indebted to her in the sum of $60,235.57 for money had and received by them and each of them to her use as alleged in the first and third causes of action, both of which are here repeated in large part by reference; that defendants concealed from her their dealings with her property; that on April 18, 1922, she finally obtained from Homer C. Millsap a statement of account, and found it "to be untruthful and incorrect and that large sums of money which said defendant Homer C. Millsap admitted had been collected by him and received by the defendants had been appropriated to his own use, as hereinbefore alleged"; that plaintiff learned for the first time on April 18, 1922, except as to the $20,000 transaction, "that the said appropriation of said moneys had been done in secret by said defendants, as aforesaid; . . . that prior to the commencement of this action plaintiff demanded of said defendants and each of them the payment to her of said sum," and they and each of them refused to pay said sum or any part thereof to plaintiff, and it is now wholly unpaid.

The allegations which we have summarized from the complaint clearly show that the appellant received money of the plaintiff in said civil action in a large amount; that at the time he received it he was acting in a fiduciary capacity for her; that instead of investing and keeping it for her, which he should have done in the due and lawful execution of his trust, he fraudulently appropriated it to his

own use and refused on demand to return it. This is sufficient to make out a case of embezzlement under sections 503 and 506 of the Penal Code (10 Cal. Jur. 265; *People* v. *Shearer*, 143 Cal. 66 [76 Pac. 813] ; *People* v. *Gordon*, 133 Cal. 328 [85 Am. St. Rep. 174, 65 Pac. 746] ; *People* v. *Steffner*, 67 Cal. App. 23 [227 Pac. 699]). Although neither the date at which this misappropriation occurred nor the dates on which plaintiff demanded the return of her money are alleged, yet a prosecution for the embezzlement was not barred by the statute, at least as to the sum of $8,500, for that amount was received by appellant within three years before he verified the answer, and of course could not have been embezzled before it was received. ■ An admission of the truth of these allegations would, therefore, have subjected appellant to a criminal prosecution for embezzlement, and he was not required by section 446 of the Code of Civil Procedure to verify his answer.

■ The respondent attempts to defeat this conclusion by calling attention to the fact that the part of the answer which is the subject of the assignment of perjury on which appellant was convicted is not a denial of any allegation of the complaint, but is an affirmative allegation, and contends that even though defendant might under the circumstances be excused from verifying so much of his answer as consisted of denials, he was bound to verify the affirmative allegations thereof. This contention finds no support in the Code of Civil Procedure. Section 437 of that code, as it stood when this answer was filed, divided defenses into two classes, (1) denials, (2) new matter, and as to the first class imposed stricter requirements in case of a verified complaint, but as to the second class permitted the same form of allegation whether the complaint was verified or unverified. There is, therefore, no reason to suppose that the legislature intended to impose on the pleader any greater degree of strictness in regard to verification for such defenses than for those of the first class, nor does the language of the code lend itself to any such differentiation. The provision of section 446 is that ''when the complaint is verified, . . . the answer must be verified''; thus evidently regarding each document as a whole to be either verified or not verified, and not countenancing the splitting of either into parts or a piecemeal verification. Respondent cites no authority in support

of its contention as to the verification, but concedes that the case of *Martin* v. *Bernheim,* 34 N. Y. Supp. 784, is authority to the contrary. That case was based on a statutory provision that the verification "may be omitted" where the party pleading would be privileged from testifying as a witness concerning an allegation contained in the pleading which he answers. The court had before it a case of this kind, where the allegations of the complaint showed that the defendant was guilty of a misdemeanor, and in holding that the defendant was entitled to make an unverified answer, said: "Under the express provision of the Code, he is allowed to answer such an allegation contained in the complaint by an unverified answer. The fact that in the same answer he has the right to plead other defenses does not take away from a defendant a right to answer such an allegation as is contained in this complaint without verifying the answer. All of the defenses to the action, and all facts pleaded in mitigation of damages, must be set forth in one pleading."

We conclude that the exceptions made by section 446 to the requirement that the answer be verified are intended to cover the answer as a whole, including everything which under section 437 may be contained therein, and hence the verification charged in the indictment was not required by law, even as to the affirmative allegations contained in the answer.

It is not the rule that every false swearing constitutes perjury, even though it be as to material facts. As stated in *People* v. *Howard,* 111 Cal. 655, 658 [44 Pac. 342, 343]: "One of the primary essentials of the crime of perjury is that the false oath must be material or of consequence in the matter or proceeding in which it is taken (Pen. Code, sec. 118); and it is well established that the matter or thing sworn or testified will not be held so material where the officer or tribunal before whom the oath is taken had not jurisdiction of the subject matter of the oath, notwithstanding there may have been general authority to administer oaths in like cases, if within the jurisdiction."

In that case it was held that the defendant was not guilty of perjury, it being alleged that he had falsely verified a criminal complaint filed in a city recorder's court, because this

complaint did not show that the recorder's court had jurisdiction of the offense charged.

In the case of *In re Clark*, 54 Cal. App. 507 [202 Pac. 50], it was held that a defendant who gave false testimony at the trial of a criminal case before a justice of the peace was not guilty of perjury because the complaint in the criminal case did not state facts sufficient to constitute a crime, although the testimony given was no doubt material to the charge made, the court saying: "In order that a charge of perjury be made out against the petitioner, it was necessary that the alleged false testimony had been given in a judicial proceeding and that the same was material to a valid issue properly made therein. If the complaint in the gaming case failed to charge a public offense, as is asserted, then the testimony of petitioner would not amount to perjury as the crime is defined by the statute."

These cases do not touch the precise point involved in the present case, but we think the principle on which they are based, as stated in the Howard case, is controlling here. It cannot be said here that the false oath charged was material or of consequence in the proceeding in which it was taken, for it gave the answer to which it related no standing or weight which it would not have had without the oath. Circumstances might have arisen in the action under which the verification would have been of some consequence, as, for instance, if an application had been made for some provisional remedy, on which the answer could have been used as an affidavit; but the indictment charges nothing of this kind. As far as appears therefrom the answer was used solely as a pleading and as such it was no more effective with the verification than it would have been without it.

The courts of several other states have had occasion to consider cases similar to that before us, and as far as we have discovered they have reached the same conclusion as that which we have stated. In the case of *Beecher* v. *Anderson*, 45 Mich. 543 [8 N. W. 539], the court was asked to issue a writ of *mandamus* to compel a sheriff to serve a warrant for the arrest of one Wheaton on a charge of perjury, and the court, while commenting on the extraordinary nature of the proceeding, decided the case on the theory that the sheriff might refuse to serve the warrant if the complaint upon which it was issued stated no crime, and

proceeded, therefore, to consider the sufficiency of the complaint. The offense charged against said Wheaton was that he had as an officer of and in behalf of a certain corporation verified its answer to a bill in equity. The court in an opinion written by Judge Cooley said:

"Perjury is committed 'when a lawful oath is administered in some judicial proceeding to a person who swears wilfully, absolutely and falsely in a matter material to the issue or point in question.' (3 Just. 164; 4 Bl. Com. 137; *People* v. *Fox*, 25 Mich. 492.) By this is meant that the oath must be material; the facts sworn to may be material, and yet the false swearing be no perjury because the oath performed no office in the case, and was wholly unimportant and immaterial. This point is well illustrated, in the case of *People* v. *Fox*, just referred to. Fox was informed against for having made a false affidavit in a suit at law pending in the circuit court for the county of Branch wherein he affirmed that one of the defendants in said suit did not execute the obligation sued upon. The fact sworn to was material, but it did not appear from the information that the affidavit was made to be used in the case, or·that it actually was used, or that it performed or was to perform any important office whatever in the case. It did not therefore appear that the oath was of any materiality. *People* v. *Gaige*, 26 Mich. 30, is, if possible, still more directly in point. The alleged perjury was committed in swearing to a bill in chancery. It was averred that the facts sworn to were material, but the information did not show that the bill was one of a character required by law to be under oath, or that it was sworn to in order to be used as the foundation of any motion or other application to the court. So far as appeared, therefore, the oath was a merely idle ceremony, and its being taken in the case was of no importance. . . . The answer of a corporation is not required to be sworn to, but is put in without oath under the corporate seal. . . . It does not appear from the complaint that the answer was to be used for any purpose for which an oath to it could be of any importance. So far as appears, therefore, the oath of Wheaton to the answer was wholly an idle ceremony. The answer was no better with it than without it; it affected the issue in no manner what-

ever; it strengthened no statement made by the answer, and it made no statement evidence that would not have been evidence without it, and gave no statement weight or force that it would not otherwise have possessed. As an information the complaint would therefore have been fatally defective."

The language which we have quoted from *Beecher* v. *Anderson* sufficiently states the holding in two other Michigan cases, *People* v. *Fox*, 25 Mich. 492, and *People* v. *Gaige*, 26 Mich. 30. It appears from the Fox case that the Michigan statute defining perjury refers to the oath taken as one "required or authorized by law."

In *Silver* v. *State*, 17 Ohio, 365, the court held that an affidavit of the truth of an answer in equity did not constitute ground for a charge of perjury where the bill did not call for an answer under oath, saying: "To constitute perjury, the oath or affirmation must be material or be required by, or have some effect in, law. Under the late act, an affidavit of the truth of an answer in chancery has no legal effect unless the bill expressly calls for such answer on oath. Unless called for on oath, the affidavit of the truth of the answer is wholly immaterial; it neither benefits the respondent nor injures the complainant. The answer has the same effect, and nothing more, that it would have had, had it not been sworn to."

In *State* v. *Parrish*, 129 La. 547 [56 South. 503, 39 L. R. A. (N. S.) 96], it was held, quoting the syllabus in L. R. A., "To falsely make oath before a notary public in order to obtain a saloon license is not perjury, when the law governing the issuance of such licenses does not require such an oath. An oath must be administered in accordance with the law before perjury can be charged." In a note appended to this case a large number of authorities are cited to the proposition that perjury cannot be predicated of an oath not required by law.

In the case of *Lappley* v. *State*, 170 Wis. 356 [7 A. L. R. 1279, 174 N. W. 913], it was held that a charge of perjury may be based upon an oath taken in verifying a complaint in a civil action, although under the law of Wisconsin a complaint may or may not be verified, the court saying: "A complaint in a civil action pending in a court having juris-

diction to hear the cause is a material matter in the proceeding, and an oath verifying it is one in regard to a matter before a court, and is authorized by law.''

The court did not state what the provisions of the Wisconsin statute were as to the effect of a verification of a complaint; but if they were like those of the California law, the case is clearly distinguishable from the one which we now have before us. Under our statute the law authorizes verification of a complaint and annexes certain consequences to the taking of an oath for that purpose. If the plaintiff verifies his complaint, it follows under sections 437 and 446 of the Code of Civil Procedure that the denials of the answer must be in a certain form and that the answer must be verified. Hence it may be said of the verification of a complaint, in the words of *People* v. *Howard, supra,* that the oath is of consequence in the proceeding in which it is taken, and a charge of perjury can be based upon it. Upon this ground the case of *Lappley* v. *State,* could be sustained as consistent with the other authorities. In a note to this case where reported in American Law Reports, the authorities on this subject are again collected and cited, and the annotator states the rule as follows: ''It is well established that where the pleading is of a character which the law does not require shall be verified by oath, perjury cannot be assigned upon a false oath made in verifying such a pleading.''

Respondent also argues that the exception to the rule requiring verification of an answer is in the nature of a personal privilege which may be waived by the defendant, and was waived in the case at bar by the making of the verification; and likens the case to that of a defendant in a criminal prosecution who elects to take the stand and testify in his own behalf, citing authorities to the effect that such a defendant may be convicted of perjury if he gives false testimony. But the comparison attempted is not apt. Although the defendant is not required to testify, yet if he desires to do so he must be sworn in order to exercise that privilege, and the oath is therefore required by law. The two situations would be more nearly analogous if the law provided that the defendant in a criminal case might make an unsworn statement to the jury and have it considered by them as testimony. If such a provision were in

the law and defendant should then voluntarily take an oath before making his statement, we hardly think he could be held guilty of perjury. In the case before us there is no personal privilege to be waived. The word "unless" is the equivalent of "except" (*Estate of Smith*, 131 Cal. 433 [82 Am. St. Rep. 358, 63 Pac. 729]), and the part of section 446 introduced by it is therefore an exception to the rule previously stated. The case is simply excluded by the exception from the operation of the general provision requiring verification. As to it there is no provision for verification and the right to file an unverified answer can no more be regarded as a privilege in this case than in a case where the complaint is not verified.

Respondent bases a further argument upon the use of the word "may" in section 118 of the Penal Code, which reads as follows: "Every person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath *may* by law be administered, wilfully and contrary to such oath, states as true any material matters which he knows to be false, is guilty of perjury."

■ The point made is that the word "may" is permissive and not mandatory, and hence under this section perjury may be committed where an oath is authorized or permitted, though not required. This may be correct in cases where the law does in truth permit an oath and annexes some consequence to it, as in the case of a complaint in an ordinary civil action, which we have already discussed; but it is not correct to say as to the case before us that the law authorizes or permits any oath. The necessity for the verification of a pleading arises from the statute alone, and the question whether it is authorized or required is to be solved entirely upon the construction of section 446 of the Code of Civil Procedure. (*Claiborne* v. *Castle*, 98 Cal. 30 [32 Pac. 807].) In the present case, section 446, as we have already seen, does not authorize or provide for a verification of the answer in question; it is merely a case excepted from the rule requiring verification. There is no more authority of law for an oath in such an excepted case than there is in any other case where an oath is not provided for. The most that can be truthfully said is that the law does not

forbid an oath in such a case, and this can be said with regard to all voluntary oaths that may be made, upon which it is well established that no charge of perjury can be maintained.

The provisions of section 118 are not materially different in this respect from the Michigan statute, under which a charge of perjury could be based on any oath "authorized or required by law," and yet the Michigan cases above cited held that perjury could not be committed by an oath taken in verifying a pleading where no verification was required. So, too, under a federal statute providing that a false oath "in any case in which a law of the United States authorizes an oath to be administered" may be the foundation of a perjury charge, it was held in *United States* v. *Cameron*, 282 Fed. 684, 689, that "nothing is better settled with reference to the offense of perjury than that it may not be based upon an oath, however solemnly taken, when it is not required by law to be taken by the party charged." The same ruling was made under the same statute in *United States* v. *Robertson*, 257 Fed. 195.

We conclude that the false oath alleged by the indictment does not support the charge of perjury. Our conclusion on this point renders it unnecessary to discuss other objections which appellant makes to the indictment, or to consider the objections upon other grounds to the judgment. The original complaint in the civil action was introduced in evidence at the trial, and contains the same allegations appearing in the copy thereof set forth in the indictment. The evidence shows that there was in the civil action no application for provisional relief, on which the answer could be or was used as an affidavit, and hence the indictment is not amendable so as to state a public offense. It thus appearing that there can be no new trial on this indictment, the appeal from the order denying the motion for a new trial has become moot and should be dismissed.

The judgment is reversed, the appeal from the order denying a new trial is dismissed, and it appearing that the defendant has given bail, it is directed that his bail be exonerated.

Conrey, P. J., and York, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 28, 1927.

Shenk, J., dissented.