[Crim. No. 2860.   Second Appellate District, Division One.—June 19, 1936.]

THE PEOPLE, Respondent, v. CHARLES G. RICO, Appellant.

Anna Zacsek for Appellant.

U. S. Webb, Attorney-General, and R. S. McLaughlin, Deputy Attorney-General, for Respondent.

DESMOND, J., *pro tem.*—Appellant was found guilty by a jury of violating section 480, Vehicle Code, and sentenced to twelve months imprisonment in jail.  He appeals from the judgment and from an order of the trial court denying him a new trial; also from order denying motion in arrest of judgment.

In the early morning of January 8, 1936, appellant was driving his Ford easterly over the East Sixth Street bridge that spans the Los Angeles River in the city of Los Angeles.   When approximately halfway across the bridge, at about 1:15 A. M., he had a head-on collision with a Chevrolet car driven by Gilbert Verdugo, accompanied by Ruby

Dowling. The Chevrolet stopped at the point of collision, the Ford proceeding easterly and stopping 150 feet away. Appellant was accompanied by his brother-in-law, Charles Larez. Mr. Verdugo was killed in this accident and died at the scene thereof. Mrs. Dowling was injured and rendered unconscious, recovering her senses a short time later, as she was placed in a police car. There was no evidence that appellant or Larez approached the Chevrolet or made any inquiry concerning the welfare of the occupants of that car; on the contrary, Larez testified that as soon as the Ford stopped he jumped out and saw appellant slumped under the wheel, bleeding profusely and apparently unconscious; that after a minute or two he hailed an automobile that was passing, and went to a restaurant at the easterly end of the bridge, where he asked a waitress to telephone for an ambulance, then went to a house in the immediate neighborhood, aroused another brother-in-law, one Loya, and accompanied by other relatives, including appellant's wife, returned to the scene of the accident in Loya's car; that finding appellant still apparently unconscious and in the same position, namely, "right under the steering wheel", he and Loya carried him from the Ford to Loya's car, and before the radio officers or ambulance arrived, started with him for Georgia Street receiving hospital for treatment. Appellant testified that he remembered nothing after the collision until he heard his wife questioning him before reaching the hospital. Other relatives of appellant gave testimony tending to corroborate that of Larez and appellant. James Vickery, a witness produced by the People, testified that as he was driving east on the bridge he heard the impact of the collision, immediately stopped and backed up about 50 feet to a point across from the Ford, where he stopped again, meantime watching that automobile and failing to see anyone get out of it. After looking at the Ford and seeing no one in it, he went to the Chevrolet and found Mrs. Dowling and Verdugo in the wreckage. Not less than ten minutes later he came back to the Ford and found it unoccupied. Norman Gilmore testified that he arrived at the scene of the accident before the officers from the radio car and before the ambulance; that he saw three cars there and the witness Vickery. Archie Allum, a radio car officer, stated that he with his partner arrived at the scene of the accident within three minutes after he re-

ceived a call at 1:17 A. M., stopping on the way to get specific directions from the waitress who had telephoned for help. It appeared from records of the hospital that appellant walked in there accompanied by his wife at 1:47 A. M., thirty minutes after the radio officer received his call, according to his testimony. The hospital is located at Figueroa and Pico Streets, approximately three miles distant from the East Sixth Street bridge.

On these facts, appellant's counsel argues that there is no evidence to sustain the verdict reached by the jury that section 480 of the Vehicle Code was violated. That section requires the driver of any vehicle involved in an accident resulting in the injury or death of any person to stop at the scene of the accident and to fulfill the requirements of section 482 of the Vehicle Code. The latter section requires such driver to give his name and address, together with the vehicle's registration number and owner's name to the driver or occupants of any vehicle collided with, or to an officer at the scene of the accident; also requires the driver to render to any person injured in such accident reasonable assistance, specifying certain particulars thereof. (Stats. 1935, p. 93, at p. 171.)

It is apparent that no requirement of section 482 of the Vehicle Code was met by this appellant, and his counsel contends that he was excused by reason of his being rendered unconscious. It may be conceded that such an excuse is valid; therefore, the real question here is whether the jury had any evidence before it which would cast a reasonable doubt upon the statement of appellant and his witnesses that he was unconscious from the time of the collision until after his removal from the scene of the accident. One of the exhibits was a photograph of the Ford V8, appellant's car. The jurors, having heard Mr. Vickery's testimony that he looked at this automobile when he brought his car to a stop beside it, and saw no one in it, and having also heard Larez's testimony that he jumped out of the Ford and left appellant in an unconscious condition, slumped "right under the steering wheel", was called upon to consider whether a man could be so far hidden beneath the wheel of the Ford as to be invisible to Mr. Vickery from his point of observation. It is evident that they did not believe that was possible, thus deciding a question, upon conflicting evidence, against the

appellant. Because we consider that Mr. Vickery's evidence on this point was direct and positive and not "negative evidence", such as is mentioned in *People* v. *Scofield*, 203 Cal. 703, at page 707 [265 Pac. 914], we believe the reasoning of that case is inapplicable here.

Upon examination of the instructions given by the court, we find appellant's claim of error in regard thereto is not sustained by the record. The attempted appeals from the order of the trial court denying motion in arrest of judgment and from the sentence, not being sanctioned under our procedure are ordered dismissed. Judgment and order denying motion for a new trial are both affirmed.

York, Acting P. J., and Doran, J., concurred.