[Crim. No. 2891. Second Appellate District, Division One.—November 30, 1936.]

## THE PEOPLE, Respondent, v. FLORENCE GODINES, Appellant.

Ingall W. Bull and Franklin B. MacCarthy for Appellant.

U. S. Webb, Attorney-General, Frank Richards, Deputy Attorney-General, Buron Fitts, District Attorney, and A. H. Van Cott, Deputy District Attorney, for Respondent.

BISHOP, J., *pro tem.*—Appellant, convicted of perjury, appeals from the order denying her motion for a new trial and from the order denying her motion in arrest of judgment. The appeal from the latter order must be dismissed; it is not an appealable order. (Pen. Code, sec. 1237; *People v. Rico*, (1936) 14 Cal. App. (2d) 666 [58 Pac. (2d) 956].) Because a communication from the appellant to her husband was admitted in evidence over her objection, however, the appeal from the order denying a new trial has merit. We are of the opinion, furthermore, that both the substance of the sworn statement, alleged to be false, and the statement itself were material and that a charge of perjury may properly be based thereon.

Early in July, 1935, appellant filed a complaint duly verified seeking to have her marriage with a Filipino annulled, on the ground that she had been induced to marry him by the fraudulent representation that he was of Spanish Castilian

descent. There followed the statement that he had informed her immediately after the marriage of his real racial heritage and that the parties had then separated and had lived separate and apart ever since. The allegations of the complaint respecting the separation were those assigned in the information charging perjury as being false.

Appellant argues that the allegations claimed to be false were immaterial and, therefore, even if false, their utterance would not constitute perjury. We find them to be material. ■ It is true that it is not every fraud which will serve as an excuse for having a marriage annulled; only those frauds which are vital to the marriage relation are sufficient causes. (*Mayer* v. *Mayer*, (1929) 207 Cal. 685 [279 Pac. 783]; *Marshall* v. *Marshall*, (1931) 212 Cal. 736 [300 Pac. 816, 75 A. L. R. 661]; notes, 14 A. L. R. 121 and 75 A. L. R. 663.) ■ In view of the declared policy of this state that a white person and a Filipino may not marry (sec. 60, Civ. Code; *Roldan* v. *Los Angeles County*, (1933) 129 Cal. App. 267 [18 Pac. (2d) 706]), it seems clear that a misrepresentation by a Filipino that he is a Spaniard is a fraud that touches a vital spot in the marriage relation and constitutes, therefore, a cause for annulment. ■ We should add that the marriage in question took place in New Mexico, where it was valid and hence of itself the ethnological status of the parties was not a ground of annulment. (Sec. 63, Civ. Code; *McDonald* v. *McDonald*, (1936) 6 Cal. (2d) 457 [58 Pac. (2d) 163, 104 A. L. R. 1290].)

■ Where the reason an annulment is sought is that fraud induced the marriage, whether or not the parties cohabited after the fraud was discovered, is material. Section 82 of the Civil Code provides: "A marriage may be annulled for any of the following causes, existing at the time of the marriage: . . . Four. That the consent of either party was obtained by fraud, unless such party afterwards, with full knowledge of the facts constituting the fraud, freely cohabited with the other as husband or wife." While it might be argued that cohabitation would be a matter of defense, hence the allegations in the complaint respecting separation would be immaterial, our Supreme Court in *Millar* v. *Millar*, (1917) 175 Cal. 797, 805 [167 Pac. 394, Ann. Cas. 1918E, 184, L. R. A. 1918B, 415], strongly indicates, at least, that lack of cohabitation should be alleged in the complaint. We have

724

concluded, therefore, that the allegations of appellant's complaint that she and the one, to whom she was married, separated and continued to live so, were material allegations.

Appellant makes a further attack upon the foundations of the case against her by contending that, as the complaint could have been filed unverified, its verification was a voluntary, idle act, one of the consequences of which may not be a conviction of perjury. We find this contention supported neither by authority nor reason, and we are disinclined to remove further the sanctions of perjury from those who swear falsely by holding that one may with impunity verify a complaint which contains allegations known to be untrue.

There is nothing in the language of section 118 of our Penal Code to warrant the conclusion urged upon us. That section reads: ''Every person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath may by law be administered, wilfully and contrary to such oath, states as true any material matter which he knows to be false, is guilty of perjury.'' Our dispute centers around the words ''in any of the cases in which such an oath may by law be administered''.

Instances may now and then be found where the statement is made that, at common law or under such statutory provisions as ours, perjury will not follow unless the oath is *required*, but we know of no case which justifies so strict a test. The test more accurately stated is that the oath must be either *authorized* or required. It is so stated in 48 Corpus Juris, 842. See, also, *Silver* v. *State*, (1848) 17 Ohio, 365; *People* v. *Fox*, (1872) 25 Mich. 492. The only case in California closely in point recognizes that the test is not ''is the oath required?'', but, ''is it authorized or required?'' Reference is made to *People* v. *Millsap*, (1927) 85 Cal. App. 732 [260 Pac. 378]), decided by this court, which not only casts no doubt upon the correctness of our conclusion that false statements in a verified complaint may constitute perjury, but indeed affirmatively supports it.

. The Millsap case decided that one who had verified an answer where, by the terms of section 446 of the Code of Civil Procedure, verification was unnecessary, could not be found guilty of perjury because of false statements in the answer.

We there stated (p. 744): "There is no more authority of law for an oath in such an excepted case than there is in any other case where an oath is not provided for." In arriving at its conclusion, this court took occasion to distinguish the case then before it from that of *Lappley* v. *State,* (1919) 170 Wis. 356 [174 N. W. 913, 7 A. L. R. 1279], where plaintiff in error had been found guilty of perjury because he had verified a complaint containing a false allegation. Under the Wisconsin law there was no requirement that the complaint be verified. This court on the assumption that the Wisconsin law gave the added effect to a verified complaint over one not verified, which our code does, found the Lappley case consistent with other authorities, saying at page 743: "Hence it may be said of the verification of a complaint in the words of *People* v. *Howard,* 111 Cal. 655 [44 Pac. 342], that the oath is of consequence in the proceeding in which it is taken, and a charge of perjury can be based upon it." Again later, in response to the argument that the word "may" in section 118 of the Penal Code was permissive and not mandatory, and "hence under this section perjury may be committed where an oath is authorized or permitted, though not required", we stated at page 744: "This may be correct in cases where the law does in truth permit an oath and annexes some consequence to it, as in the case of a complaint in an ordinary civil action, which we have already discussed; but it is not correct to say as to the case before us that the law authorizes or permits any oath. The necessity for the verification of a pleading arises from the statute alone, and the question whether it is authorized or required is to be solved entirely upon the construction of section 446 of the Code of Civil Procedure." The verification of a complaint in a civil action is not required by section 446, *supra,* but it is authorized. The section contemplates the verification of a complaint and expressly gives legal sanction to its verification in requiring: "Except in justices' courts of Class B, when the complaint is verified, the answer must be verified." Section 437 of the Code of Civil Procedure also attaches legal authority to the verification of a complaint by requiring a more specific denial of its allegations than would be permitted in case of an unverified complaint. What an anomalous situation we would have if, by verifying his complaint, a plaintiff could *require* a defendant to answer under oath,

specifically and truthfully, under penalty of perjury, yet the verification of the complaint would be a mere voluntary act, free from the fear of possible perjury charges. Such is not the law. One who takes an oath that the allegations in a complaint are true, is not taking an oath merely not prohibited, but is taking an oath in a case "in which such an oath may by law be administered", that is, within the meaning and contemplation of section 118, Penal Code.

As was to be expected, much of the evidence at the trial was directed to the question, did or did not appellant live with her husband after she learned that he was not of Spanish ancestry. The defendant and her witnesses denied that there had been cohabitation. In the main the People's evidence consisted of contrary testimony by the Filipino himself. His testimony was received over the objection of the defendant, and, as appellant, she now contends that its receipt was contrary to the provisions of section 1322 of the Penal Code, which opens with the statement: "Neither husband nor wife is a competent witness for or against the other in a criminal action or proceeding to which one or both are parties." At the time of the trial, however, the Filipino was no longer the husband of the defendant, and the prohibition of section 1322 of the Penal Code was not applicable. (*People* v. *Loper*, (1910) 159 Cal. 6 [112 Pac. 720, Ann. Cas. 1912B, 1193].) The addition to the section of the words "before or after marriage", inserted in 1933 amid the exceptions to the general introductory statement, has not, in our opinion, changed the conclusion announced in the case last cited.

 A different problem is presented, however, by the ruling admitting into evidence a letter written by appellant to her husband in March, 1935, while the marriage was still in effect. In view of the conflicting testimony on the subject of their living together, if it was error to admit this letter, full of admissions inconsistent with appellant's defense, the error was plainly prejudicial. That it was error is a conclusion required by the provision in section 1881 of the Code of Civil Procedure (the italics are ours), "A husband cannot be examined for or against his wife without her consent; nor a wife for or against her husband, without his consent; nor can either, during the marriage *or afterward,* be,

without the consent of the other, examined as to any communication made by one to the other during the marriage.'' The case of *People* v. *Mullings*, (1890) 83 Cal. 138 [23 Pac. 229, 17 Am. St. Rep. 223], applied the section in a criminal case after the marriage relation had ceased, due to a divorce. See, also, *People* v. *Loper, supra*. While we recognize the fundamental difference between a decree of divorce, whereby a marriage is dissolved, and a judgment of annulment, whereby it is adjudged that a marriage was never valid, we are of the opinion that within the meaning of the language we have quoted from section 1881 of the Code of Civil Procedure, there is a period ''during the marriage'' even in the case of an annulled marriage, and that after the annulment, a communication theretofore made by the wife to the husband may not be received in evidence over her objection. No authority to the contrary is cited to us and none has been discovered by us.

We have not discussed appellant's claim that the information is faulty in that it fails to allege in direct language that appellant had taken an oath before she swore to the verification, because that defect is one that can be cured by an amendment in the trial court.

The order denying appellant's motion for a new trial is reversed. The cause is remanded for a new trial.

York, Acting P. J., and Doran, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 28, 1936.