[Crim. No. 3211. Third Dist. Feb. 6, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. ROY GRIDER, Defendant and Appellant.

[Crim. No. 3212. Third Dist. Feb. 6, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. WILMA RUTH DICKINSON GRIDER, Defendant and Appellant.

Robert W. Anderson, under appointment by the District Court of Appeal, for Defendants and Appellants.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Richard Diebold Lee, Deputy Attorney General, for Plaintiff and Respondent.

SCHOTTKY, J.—Wilma Ruth Dickinson Grider was convicted by the court sitting without a jury of two counts of perjury and one count of conspiracy. Roy Grider was convicted of three counts of perjury and one count of conspiracy. The charges grew out of statements made by each of the defendants in connection with the claim of Wilma Ruth Dickinson Grider under the aid to needy children program. A motion for new trial was made on behalf of each defendant and was denied. Judgment was imposed in each case, but execution of judgment was suspended and probation granted to each defendant. This appeal followed. The appeal is from the judgment in each case and from the orders denying each defendant's motion for a new trial. The appeals have been consolidated as were the trials of both appellants.

Appellants make a number of contentions, but before discussing them we shall give a brief summary of the evidence as shown by the record. During 1957 Wilma Ruth Dickinson Grider, then Wilma Dickinson (she married Roy Grider in 1960), was receiving aid in Butte County through the aid to needy children program. She was residing in Apartment Number 2 in a building located at 1569 Myers Street, Oroville. In November 1958 a welfare worker called on Wilma. The worker asked Wilma if she were pregnant and if a man were living with her in the apartment. Mrs. Grider answered ''no'' to both questions.

In January 1959 the welfare department was informed that Wilma had given birth to a child on January 12, 1959. Thereafter Wilma applied for additional welfare aid for the new child. On the application Wilma listed the child's father as ''Tony Gentile,'' and the birthplace as ''California.'' On the basis of the application aid was given for the new child.

Though an investigation was made the department was unable to find a record of the child's birth. The department also attempted to locate the alleged father of the child but was unable to find any record of any such person.

Because the department was unable to secure a birth certificate, and since Wilma was unable or unwilling to secure a birth certificate, aid was discontinued on the basis that Wilma was withholding information.

Wilma appealed the decision to the Department of Social Welfare of the State of California. A hearing was had before a referee of the department who administered an oath to both Wilma and Roy Grider. During this hearing Wilma testified that Tony Gentile, not Roy Grider, was the father of the child. She also testified that her relationship with Roy Grider was only a business one; that she paid rent for her apartment; that Roy Grider lived in another apartment in the building. Roy Grider testified that he paid rent for an apartment he occupied on the top floor of the building; that he never took any trips with Wilma; that he had never been intimate with her; that he was not her "boy friend"; and that he had never introduced her as his wife. The perjury counts were based on the testimony at the hearing.

The testimony at the trial added the following: Roy Grider was the manager of the apartment house where he resided. As part of his compensation he was permitted to occupy Apartment Number 2 at a reduced rental. The owners visited the apartment on several occasions and understood that Wilma was Roy's housekeeper. On one occasion they noticed a ring on Wilma's finger and offered congratulations. Neither appellant denied they were married; rather they nodded and smiled.

The owners were never informed that Wilma occupied the apartment on a rental basis. They thought Mr. Grider was the occupant. They were not aware until shortly before the trial that there was a habitable room on the third floor. Two neighbors had frequently observed Mr. Grider entering Apartment Number 2 about 6 a. m., after he finished his tour of duty as a police officer.

One neighbor testified that a few weeks after the youngest child was born Wilma told her that she would not have intercourse with Roy again until one of them was "fixed." This same neighbor also testified that she had seen mail addressed to "Mr. and Mrs. Grider."

Another neighbor testified Wilma had stated shortly after

the birth of the youngest child that "he [referring to Roy] would have been disappointed if it hadn't been a girl." She also testified that both Roy's and Wilma's children lived in Apartment Number 2 and that Roy had his meals there. This neighbor also testified that Wilma told her that Roy and she had been married before the youngest child was born.

Pursuant to an order of the court, Wilma, Roy and the youngest child submitted to a blood test to determine if Roy could be the father of the child. The receptionist for the doctor testified that Roy said he did not see much need for a blood test since he was satisfied he was the father. The blood test indicated that he could have been the father of the child.

Testimony of Roy Grider given before the Butte County Grand Jury was read into the record. He admitted that he had been out of the state with Wilma more than once. In his testimony Roy admitted that in June 1958 he left Oroville with Wilma's children and his; that he had driven to Fernley, Nevada, where he picked up Wilma and drove with her to Miami, Oklahoma.

Appellants do not directly challenge the sufficiency of the evidence to support the judgments of conviction as to the perjury counts but do contend most earnestly that the statements made at the welfare hearing were not material because, as they assert, such statements did not influence the decision of the Social Welfare Board upholding the county's decision cutting off aid. This contention cannot be sustained.

Section 118 of the Penal Code provides: "Every person who, having taken an oath that he will testify . . . truly before any competent tribunal . . . or person, in any of the cases in which such an oath may by law be administered, wilfully and contrary to such oath, states as true any material matter which he knows to be false, . . . is guilty of perjury."

As was stated in *People* v. *Barry,* 153 Cal.App.2d 193 [314 P.2d 531], at page 209: ". . . The ordinary test of materiality is whether the testimony given could have probably influenced the tribunal before which the cause was being tried, upon the issue involved therein."

And as stated in *People* v. *Darcy,* 59 Cal.App.2d 342 [139 P.2d 118], at page 349: ". . . The test in a perjury charge is not that injury actually occurred as a result of the false statements, but that the falsehoods could have influenced or changed the status of the subject of the statement to the benefit of the falsifier or the detriment of others."

In the instant case Wilma was appealing from a

decision cutting off aid. Part of the reason for cutting off aid was the fact that a man was living in her apartment with her. The question whether Roy was living with Wilma was directly in issue on the question of whether she was entitled to aid. All of the questions relating to the relationship were material to the issue. The testimony of Wilma and Roy could have influenced the decision and were material within section 118 of the Penal Code.

Appellants contend further that inasmuch as there is no specific reference in the Welfare and Institutions Code to punishment by perjury for false statements made at a hearing pursuant to section 104.5 of the Welfare and Institutions Code such convictions are therefore improper. Appellants argue that inasmuch as certain other sections of the Welfare and Institutions Code specifically mentioned the application of the penalties for perjury for certain false statements made on applications for certain types of welfare aid that an absence of such provision in relation to a hearing under section 104.5 indicates a legislative determination that prosecution for perjury not apply to false testimony at such appeal hearing.

Section 104.5 of the Welfare and Institutions Code provides for a hearing before the Board of Social Welfare, or its referee, upon petition of an applicant for or recipient of aid under certain sections of the Welfare and Institutions Code. Section 104.5 further grants the board or its referee all the powers and authority conferred upon heads of departments by sections 11180 et seq. of the Government Code. These powers include the administration of oaths provided by section 11181 of the Government Code. These hearings pursuant to section 104.5 are not otherwise circumscribed. It is therefore respondent's contention that the provisions of section 118 of the Penal Code would apply to such a hearing in the same manner as the perjury section applies to other administrative and judicial proceedings. Absent a specific legislative determination to the contrary, or a different order of proceedings, such as found in sections 3006 and 3405 of the Welfare and Institutions Code the general perjury statute, section 118 of the Penal Code, is applicable.

Appellants do not further challenge the sufficiency of the evidence in regard to the perjury counts. Suffice it to say, taking the evidence most favorable to the judgment of conviction (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]), there is sufficient evidence as to each element of the

corpus delicti of the crime of perjury to sustain the convictions. Specifically, there is evidence that each appellant " (a) took an oath that he would testify, declare, depose or certify truly before (b) a competent tribunal, officer or person, (c) that such oath was taken in a case in which an oath may be lawfully administered, and (d) that [each] defendant wilfully and contrary to such oath stated as true a material matter which he knew to be false." (*People* v. *Guasti,* 110 Cal.App.2d 456, 463 [243 P.2d 59].)

Finally, appellants contend that if the statements alleged in the perjury counts are immaterial, as they contend, then the conspiracy charge against each appellant must fail because of the direct reference to these false statements as overt acts necessary for the crime of conspiracy. This contention cannot be sustained. ▉ It is apparent that appellants misunderstand the nature of the overt acts necessary to sustain a conviction of conspiracy, for as stated in *People* v. *Cuda,* 178 Cal.App.2d 397 [3 Cal.Rptr. 86], at page 411: ". . . The gist of a criminal conspiracy is a corrupt agreement of two or more persons to commit an offense prohibited by statute, accompanied by some overt act in furtherance of the objects of the conspiracy. (Pen. Code, §§ 182, 184; *People* v. *Brownstein,* 109 Cal.App.2d 891, 892 [241 P.2d 1056]; *People* v. *Pierce,* 110 Cal.App.2d 598, 610 [243 P.2d 585].) ▉ The existence of the agreement may be established by circumstantial evidence. (*People* v. *Steccone,* 36 Cal.2d 234, 237-238 [223 P.2d 17].) ▉ The agreement may be inferred from the acts and conduct of the defendants in mutually carrying out a common purpose in violation of the statute. (*People* v. *Benenato,* 77 Cal.App.2d 350, 358 [175 P.2d 296]; *People* v. *Brownstein, supra.*) ▉ It is not necessary that the overt acts be criminal. (*People* v. *Gordon,* 71 Cal.App.2d 606, 628 [163 P.2d 110].) If such acts are done as a step toward the furtherance of the conspiracy they are sufficient. (*People* v. *Gilbert,* 26 Cal.App.2d 1, 23 [78 P.2d 770].) ▉ Further, the overt act may be accomplished by only one of the conspirators and yet be sufficient, for all the members of the conspiracy are bound by all acts of all members done in furtherance of the agreed plot. (*People* v. *Creeks,* 170 Cal. 368, 374 [149 P. 821]; *People* v. *Pierce, supra.*)"

▉ Applying the above principles to the instant case, it is clear that the trial court had adequate evidence from which to determine the existence of a criminal conspiracy to obtain money by false pretenses from the Welfare Department

of Butte County. Briefly, the evidence showed a continuing close and probably intimate relationship between the two appellants over a period of several years, dating back, perhaps, to 1956. This relationship was demonstrated by the testimony of the landlord and neighbors of appellants. This relationship was further demonstrated by testimony of various members of the community which indicated that at various times and places the appellants led people to believe they were man and wife.

The record indicates a long-time attempt by both appellants to conceal from the welfare authorities of Butte County information as to the true nature of the relationship between them and the true nature of their living arrangements. Inasmuch as this concealment enabled Mrs. Dickinson to draw considerable welfare funds to which she would not otherwise have been entitled, it lends great support to the determination of the trial court that a conspiracy existed between the appellants to obtain these funds.

In view of the foregoing, the judgments and orders are affirmed.

Peek, P. J., and Pierce, J., concurred.