[Crim. No. 4443. First Dist., Div. Two. May 20, 1964.]

THE PEOPLE, Plaintiff and Appellant, v. EARL GENE DAVIDSON, Defendant and Respondent.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., and Derald E. Granberg, Deputy Attorneys General, for Plaintiff and Appellant.

Charles V. Moore, under appointment by the District Court of Appeal, for Defendant and Respondent.

TAYLOR, J.—This is an appeal by the state from an order dismissing a first amended information charging the defendant with perjury.[1] The trial court's order was

---

[1]Although not definitely so stated, the grounds for this second motion of dismissal indicate that it was made pursuant to Penal Code section 995. The court having previously denied such a motion, the proper procedure would have been to object to the jurisdiction of the superior court (*People* v. *Hellum*, 205 Cal.App.2d 150 [22 Cal.Rptr. 724]). However, the initial order denying dismissal under 995 was faulty since the court refused to grant defendant's motion to withdraw his not guilty

grounded on an insufficiency of competent evidence to establish the corpus delicti at the preliminary examination. We relate the testimony of the various witnesses.

The Clerk of the Superior Court of Humboldt County testified that on July 19, 1962, the defendant was called as a witness for the defense in *People* v. *Giddings*. Giddings was on trial for the grand theft of an automobile in Eureka on or about March 14, 1962. Under oath and in the presence of the jury, the defendant testified as follows: "Question: Do you know who took this auto? The witness: Yes, I do. Question, by Mr. Marks: Did Mr. Giddings take it? Answer: No." On the defendant's refusal to testify whether he had participated in the theft, the matter was adjourned to chambers. The direct examination continued. The defendant testified that he knew the person who took the car but did not know him by name as he had only met him casually in a bar. Defendant further testified that this person had come by the defendant's home the night the vehicle was stolen, told him of the theft, and the defendant gave him a ride downtown and saw the vehicle. Thereafter, the jury was instructed to disregard the defendant's testimony as it was inadmissible hearsay.

Jenny Ann Masten, the defendant's sister-in-law, testified that she lived with the defendant and his wife at their home in Eureka. The defendant worked a 4 p.m. to 12:30 a.m. shift. On the evening of March 13, 1962, he came home at 8 p.m. as usual for his half hour supper break. She, her sister, Giddings and Snyder were present. When the defendant left to go back to work, Giddings and Snyder left with him. Giddings and Snyder returned about 11 or 11:30 p.m. The defendant returned about 12:30 a.m. or later, sat around and played cards and drank with the others. They were still there when she went to bed. To her knowledge, no other person appeared at the defendant's house that evening, except the

plea (*People* v. *Villarino*, 66 Cal. 228, 230 [5 P. 154]). In order to determine a 995 motion, the court must first vacate the plea (*People* v. *Dean*, 107 Cal.App. 338 [290 P. 595]) and it is doubtful whether the court had jurisdiction to deny the initial motion. In the second motion, the court vacated the not guilty plea before granting the motion of dismissal and it can thus be considered the only motion under 995 properly ruled upon. Inasmuch as neither the district attorney nor the Attorney General raised the plea of res judicata in this appeal, we assume they considered this to be the situation or that they considerd it to be similar to a general demurrer which can be raised any number of times (2 Witkin, Cal. Procedure, § 74, p. 1710).

man who dropped the defendant off from work. She had never seen Mr. Snyder before that evening. She did not know what the defendant did after he left the house to return to work, or whether he had given anyone a ride downtown. She could not remember whether these events took place on March 13 or some other day as there were often similar evenings.

Mr. Provart, the chief investigator for the district attorney, testified that on August 6, 1962, he had a conversation with the defendant which was recorded and in which the defendant said, among other things, that on March 13, 1962, Giddings and Snyder told him they had stolen the automobile. When Provart asked the defendant about his testimony in the Giddings trial, the defendant said this was to give Giddings an alibi.

 The burden was on the prosecution at the preliminary examination to produce evidence of a reasonable probability, i.e., enough to induce a strong suspicion in the mind of a man of ordinary caution or prudence, that a crime had been committed and that the defendant was the guilty person (*Garabedian* v. *Superior Court*, 59 Cal.2d 124, 126-127 [28 Cal.Rptr. 318, 378 P.2d 590]; *People* v. *Thomas*, 90 Cal.App. 2d 491, 494 [203 P.2d 567]).

Section 118 of the Penal Code provides: "Every person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath may by law be administered, wilfully and contrary to such oath, states as true any material matter which he knows to be false, and every person who testifies, declares, deposes, or certifies under penalty of perjury in any of the cases in which such testimony, declarations, depositions, or certification is permitted by law under penalty of perjury and wilfully states as true any material matter which he knows to be false, is guilty of perjury."

 To establish the corpus delicti of the crime of perjury, it must be shown that the defendant (a) took an oath that he would testify truly before (b) a competent tribunal (c) that such oath was taken in a case in which an oath may be lawfully administered, and (d) that the defendant wilfully and contrary to such oath stated as true a material matter which he knew to be false (*People* v. *Grider*, 200 Cal.App.2d 41 [19 Cal.Rptr. 41]; *People* v. *Guasti*, 110 Cal. App.2d 456, 463 [243 P.2d 59]). The elements under (d) are the only ones in controversy in this case.

The test of materiality is whether the testimony could have probably influenced the tribunal before which the cause was being tried on the issue involved (*People* v. *Grider*, 200 Cal.App.2d 41, 45 [19 Cal.Rptr. 41]; *People* v. *Di Giacomo*, 193 Cal.App.2d 688, 699-700 [14 Cal.Rptr. 574]). The issue involved was the guilt or innocence of Giddings. The defendant's testimony had a direct bearing thereon and was clearly material. The fact that it was hearsay and not admissible does not deprive it of materiality for the purposes of a perjury proceeding (Pen. Code, §§ 122, 123).[2] Materiality is a question for the determination of the court presiding in the perjury action and not the court in which the alleged perjury was committed (*People* v. *Macken*, 32 Cal.App.2d 31, 41 [89 P.2d 173]).

We think that the prosecution failed to sufficiently establish at the preliminary that the defendant wilfully and knowingly testified falsely. Though different quanta of proof may be required at various stages of a criminal proceeding, the rules of evidence are uniform throughout and require "the production of legal evidence" and the exclusion of "whatever is not legal" (Code Civ. Proc., § 1825; *People* v. *Schuber*, 71 Cal.App.2d 773 [163 P.2d 498]). Thus, while only slight or prima facie evidence of a circumstantial nature is required to prove the corpus delicti of a crime (*People* v. *Corrales*, 34 Cal.2d 426, 429 [210 P.2d 843]), the rule is invariable that it must nevertheless be established by independent competent evidence before any extrajudicial statements are admissible (*Ureta* v. *Superior Court*, 199 Cal. App.2d 672 [18 Cal.Rptr. 873]).

The state, relying on *Murphy* v. *Superior Court*, 188 Cal. App.2d 185, 187-188 [10 Cal.Rptr. 176], *In re Flodstrom*, 45 Cal.2d 307 [288 P.2d 859], and *In re Flodstrom*, 134 Cal. App.2d 871 [277 P.2d 101], argues that a sufficient showing of the corpus delicti, apart from the extrajudicial admission, is provided by the conviction of Giddings. We do not agree. Such an argument cannot be predicated on the fact that 12

[2]Section 122: "It is no defense to a prosecution for perjury that the accused was not competent to give the testimony, deposition, or certificate of which falsehood is alleged. It is sufficient that he did give such testimony or make such deposition or certificate."

Section 123: "It is no defense to a prosecution for perjury that the accused did not know the materiality of the false statement made by him; or that it did not, in fact, affect the proceeding in or for which it was made. It is sufficient that it was material, and might have been used to affect such proceeding."

jurors heard the witness and by their verdict branded his testimony as false. Here, the jury was instructed to disregard the defendant's testimony as hearsay and thus was not even called upon to determine its veracity.

The outcome of a trial dealing with the substantive crime of another is not proof of either the innocence or guilt of witnesses who testified therein and who may subsequently be charged with perjury. A jury has absolute authority to make a final disposition and is not required to explain or justify its verdict. As we said in *People* v. *Housman*, 44 Cal.App.2d 619 [112 P.2d 944] : "The theory that when a jury acquits a defendant in a criminal proceeding it thereby finds to be true the testimony of all witnesses called on his behalf is not supported by reason or the common knowledge of mankind." (P. 623.) Likewise, when a jury finds a defendant guilty in a criminal proceeding, it does not make a finding that the testimony of the defense witnesses is untrue. A jury verdict may be based on a belief that a witness has a faulty memory, has made a mistake in identity, has misunderstood or misinterpreted words or deeds or that hearsay statements truthfully reiterated by the witness are themselves false.

The fallacy of allowing the jury verdict against Giddings to be evidence of guilt in this case is pointed up when we consider that the jury might have conceivably acquitted Giddings had they been allowed to consider the defendant's testimony. Could it be reasonably argued that the verdict should then have been admitted to prove defendant innocent? We think not.

The state's contention, if carried to its logical conclusion, would subject all witnesses to prosecution for perjury where their testimony is not consistent with the verdict. The policy of having witnesses testify at their peril would discourage the giving of testimony and have an unfortunate effect on the administration of justice. We conclude that the verdict in the Giddings case was irrelevant and thus not admissible.

If we exclude from consideration, then, as we must, the defendant's extrajudicial admission to Mr. Provart that Giddings told the defendant he stole the car and that defendant testified otherwise to give Giddings an alibi, there is no competent evidence establishing the corpus delicti. There is nothing irreconcilable or inconsistent with defendant's testimony at Giddings' trial which would indicate falsity. His

statement that Giddings did not take the car is not inconsistent with his answer on cross-examination that he knew the person who took the car but did not know his name. There was no evidence from which it could be inferred that defendant knew the name of the person who took the car. There is nothing in the testimony of Jenny Masten inconsistent with the defendant's testimony at the trial as she could not remember whether the events in question occurred on March 13 or some other evening and she admittedly did not know what the defendant did or whom he saw after he left the house about 8-8:30 with Snyder and Giddings to return to his work. Conjecture and surmise are no substitute for competent evidence (*Murphy* v. *Superior Court*, 188 Cal. App.2d 185, 186 [10 Cal.Rptr. 176]).

■ We agree that the state's contention that the proof requirements of section 1103a of the Penal Code[3] apply only to the trial and not to the preliminary examination (*People* v. *Thomas*, 90 Cal.App.2d 491, 494 [203 P.2d 567]). Although the matter was not directly raised in *People* v. *Thomas*, as there were two witnesses in that case, the rule there stated is the correct one.

■ The trial court properly dismissed the amended information for failure to establish the corpus delicti at the preliminary examination.

The order of dismissal is affirmed.

Shoemaker, P. J., and Agee, J., concurred.

---

[3] "Perjury must be proved by the testimony of two witnesses, or of one witness and corroborating circumstances." (Added Stats. 1905, ch. 533, p. 696, § 1.)