[Crim. No. 21519. First Dist., Div. Three. June 26, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
MORGAN CABOT LAWS, Defendant and Appellant.

**COUNSEL**

Cooper, Hertz & Lyons and Howard Hertz for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Dane R. Gillette, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BARRY-DEAL, J.**—Appellant, Morgan Cabot Laws, appeals from the judgment of sentence entered on June 26, 1980, after a jury found him guilty of perjury (Pen. Code, § 118) and preparing false documentary evidence (Pen. Code, § 134).

He contends that: 1) the guilty verdict is not supported by substantial evidence and the documents used as a foundation for the charges are not legally sufficient to support the charges; 2) the giving of a modified jury instruction (CALJIC No. 7.21) was prejudicial error; 3) the court improperly sentenced appellant to the maximum term; and 4) the trial court abused its discretion in denying appellant's request for bail pending appeal.

### Factual Background

On September 6, 1977, in a prior criminal proceeding in the San Mateo County Superior Court, appellant was placed on probation for violation of section 25110 of the California Corporations Code. As a condition of probation in that case, he was ordered to pay a fine and to make restitution of $27,000 to the victims, Mr. and Mrs. Aurelio Silvestri. He was required to submit proof of compliance by October 7, 1977. The charges in the case before us are based on appellant's "compliance" with the terms of his probation.

In the trial beginning June 2, 1980, Mr. Silvestri testified that on October 5, 1977, he and his wife had lunch with appellant and his secretary, Jane Nordentoft, at a restaurant in Burlingame. Mr. Silvestri, a 70-year old retired grocer, assumed that the meeting involved the $27,000 owed to him. While the secretary was away from the table, appellant gave the Silvestris $5,000 and said that they would get the rest of the money "real soon." The payment was $2,000 in cash, $2,000 in travelers checks, and a $1,000 personal check from appellant. Although Mr. Silvestri was disappointed in the amount, he accepted it because that was all appellant had. Appellant indicated that he had a plan for paying the balance. Appellant showed the Silvestris books and brochures about the San Diego-Portland Cement Company. He proposed to give the Silvestris a note from that company, but told them they had to sign a receipt for the $27,000 first.

After lunch appellant took the Silvestris to his office, where he had a promissory note prepared on the letterhead of the San Diego-Portland

Cement Company. The note for $50,000 provided for payments on principal and interest of $10,000 semiannually, with the first payment due on April 5, 1978. Appellant said that the note would cover all the money that he owed them. The note was signed in appellant's office by a man named Fillerup who was introduced as the president of the cement company; the promissor on the note was the cement company.

On delivery of the note, Silvestri was asked to sign a receipt for $27,000, which was also prepared by appellant who said that he had to have it. Silvestri signed the receipt without thinking, assuming that he would get his money from the note. The Silvestris have never received any payments from the cement company or from appellant. Mr. and Mrs. Silvestri each denied loaning any money to appellant or to the cement company or investing in the company.

Appellant's secretary, Ms. Nordentoft, testified that on October 6, the next day after the luncheon meeting, appellant asked her to file the receipt for $27,000 with the San Mateo County Clerk's office, which she did. When she asked him about the receipt, appellant told her that he owed the Silvestris some money, was unable to pay them, and was going to pay them from the profits of the cement company after it was built and in operation.

Appellant testified in his own behalf. He said that he was an owner and director of the San Diego-Portland Cement Company and that the company president was Francis Fillerup who resided in Las Vegas. When appellant met with the Silvestris for lunch on October 5, he had approximately $30,000 with him: $10,000 of his own money and $22,000 which his "people" in Mexico had sent to him. While his secretary was away, appellant laid all the money on the table and explained to the Silvestris that he had a cash problem. He asked them to accept $5,000 on what he owed them and to loan the other $22,000 to his cement company. They agreed to do so. They returned to his office where he prepared the $50,000 note which was exchanged for the $22,000 loan. Appellant had previously arranged to have the president of San Diego-Portland Cement fly into town to sign the promissory note for the Silvestris on that date.

As part of the People's case, counsel stipulated that appellant's former counsel would testify as follows: At appellant's request, his former attorney filed a motion on August 16, 1978 (about 10 months after the above events), to change appellant's plea in the prior case for which he

was on probation. A declaration signed by appellant under penalty of perjury and dated August 1, 1978, was filed with the court in support of the motion. In the declaration appellant declared that he had complied with all the terms of his probation.

The San Mateo County Superior Court granted appellant's motion, pursuant to Penal Code section 1203.4, to withdraw his plea of nolo contendere, reduced the charges against appellant in the prior proceeding to a misdemeanor, and dismissed the case against appellant.

### Sufficiency of the Evidence

The California Supreme Court recently restated the test for sufficiency of the evidence. (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].) "[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." The California decisions comply with the standards set forth by the United States Supreme Court in *Jackson v. Virginia* (1979) 443 U.S. 307 [61 L.Ed.2d 560, 99 S.Ct. 2781]. (*People v. Johnson, supra,* 26 Cal.3d at p. 576.)

Appellant's allegations relating to the insufficiency of the evidence are intermingled with his attack on the documents used as a foundation to support the charges. The two challenges will be considered together.

### Preparing False Documentary Evidence

 Appellant was accused of preparing a false receipt with the intent to produce it in the proceedings to set aside his nolo contendere plea, with the fraudulent purpose of misleading the court into finding that he had complied with the conditions of his probation, in violation of Penal Code section 134.[1]

The receipt which appellant prepared for Mr. Silvestri's signature read as follows: "Received in cash twenty-seven thousand dollars

---

[1]Penal Code section 134 provides: "Every person guilty of preparing any false or antedated book, paper, record, instrument in writing, or other matter or thing, with intent to produce it, or allow it to be produced for any fraudulent or deceitful purpose, as genuine or true, upon any trial, proceeding, or inquiry whatever, authorized by law, is guilty of felony."

($27,000.00) in cash from Morgan Cabot Laws this 5th day of October 1977." After obtaining Mr. Silvestri's signature on the receipt, appellant had Mr. Silvestri's signature acknowledged by a notary public (out of Mr. Silvestri's presence) and then had the receipt filed with the court as proof of appellant's compliance with his probation condition.

Appellant argues that the receipt for $27,000 is regular on its face and represents the receipt of cash plus a note for the balance; it therefore does not constitute a "false paper but rather an inartfully drawn document which mischaracterized the $27,000, without fraudulent or false purpose." ▇ He also urges for the first time on appeal that there was substantial compliance with his probation condition. He contends that even though the probation condition could be interpreted to require payment in United States currency, it did not specify that cash was the only acceptable form of restitution; Mr. Silvestri could and did waive his right to receive only cash when he accepted a third party note in partial payment of the amount due him.

Central to any discussion about a false paper is the fact that the superior court had ordered restitution *paid* to Mr. Silvestri, not *promised* to him. Understanding the court order well, appellant maintained during the trial that he had paid Mr. Silvestri the entire $27,000 and then Mr. Silvestri loaned $22,000 to the cement company. Appellant's knowledge of the meaning of the court order may also be inferred by use of the word "cash"[2] *twice* in the receipt prepared by appellant.

Implied in the verdict is a finding that the Silvestris did not waive their right to receive cash. Mr. Silvestri testified that he took the $5,000 in cash because that was all that appellant could give him. He signed the receipt without thinking because appellant told him that he had to have it. He denied that he had loaned any money to the cement company in exchange for the note or that he had invested money in the company. Mrs. Silvestri's testimony was corroborative of her husband's testimony.

Mr. Silvestri had never given or received a promissory note before except when he purchased his home. It is clear that he did not understand

---

[2]"Cash" is defined as "2. *Com. a.* money, esp. ready money; strictly, coin or specie, but also, less strictly, bank notes, sight drafts, or demand deposits at a bank. *b.* Money or its equivalent paid immediately or promptly after purchasing; as, to sell goods or to give a discount for *cash*. . . ." (See Webster's New Internat. Dict. (2d ed. unabridged 1946), p. 415.)

or intend to give up his right to receive the balance of $22,000 cash due from appellant in exchange for the third party note. Based on appellant's representations, he expected to receive the money soon—either from appellant or the company. The note itself substantiates his expectation of receiving the money soon. The second paragraph provides: "S.D.P.C. further agrees to pay in full this note upon receipt of a Letter of Credit for funding of San Diego Portland Cement."

(1b) Appellant testified under oath to substantially the same facts as the prosecution witnesses with one major exception: appellant stated that he had paid the Silvestris the entire $27,000 during lunch and that Mr. Silvestri loaned $22,000 in cash to the cement company. Although he first presented the plan for a loan from the Silvestris to the San Diego-Portland Cement Company at lunch on October 5, he had the prescience to arrange for Mr. Fillerup, the president of the company, to fly into town so that after the lunch Mr. Fillerup could sign the note to the Silvestris. Appellant's secretary testified that, after the $5,000 was given to the Silvestris, appellant said "this was like a down payment with the balance due." He later explained to her "he had a problem and a lawsuit pending and that he had to settle it, and part of it was with the Silvestris, some money that was owed on a previous thing that they had been together on, and that the Court had come up with a figure." The following day, appellant had his secretary file the receipt with the court.

The above evidence establishes that appellant knew that the receipt was literally false and that he intended to use it in the prior proceedings to mislead the court into finding that he had complied with his conditions of probation.

*Declaration Under Penalty of Perjury*

 The charge of perjury against appellant pursuant to Penal Code section 118[3] was based on the declaration he filed in court in support of his motion in the prior proceedings. The declaration provided in rel-

---

[3]Penal Code section 118 provides: "Every person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath may by law be administered, wilfully and contrary to such oath, states as true any material matter which he knows to be false, and every person who testifies, declares, deposes, or certifies under penalty of perjury in any of the cases in which such testimony, declarations, depositions, or certification is permitted by law under penalty of perjury and wilfully states as true any material matter which he knows to be false, is guilty of perjury."

evant part: "MORGAN C. LAWS, under penalty of perjury, declares: [¶] 2. Defendant was placed on summary probation for a period of two years on condition . . . that he make restitution to Aurelio Silvestri in the amount of $27,000 within 30 days and submit proof to the County Clerk that he had done so. [¶] 3. Defendant has complied with all of the terms of his probation. [¶] EXECUTED this *1* day of *August* 1978 at San Diego, California."

Appellant contends that the declaration does not contain an "averment . . . that the same is true and correct" and is therefore insufficient to support the charge of perjury because he has not stated "as true any material matter that he knows to be false."

An averment of truth is not a requisite to a perjury conviction (see Pen. Code, §§ 118, 1103a; Code Civ. Proc., § 2015.5). As stated in *Pacific Air Lines, Inc.* v. *Superior Court* (1965) 231 Cal.App.2d 587, 589 [42 Cal.Rptr. 68]: "Every statement in the document before us is declared 'under penalty of perjury,' and clearly is vouched for by declarant. It would be undue exaltation of form to hold that it falls short of stating that its contents are true."

Appellant asserts that *Pacific Air Lines, Inc.* v. *Superior Court, supra*, is a civil case and that the standards are more strict in a criminal proceeding. We do not agree. Penal Code section 121 provides in part: "It is no defense to a prosecution for perjury that the oath was administered or taken in an irregular manner, . . ." Although section 121 is applicable to "oaths" and does not specifically include declarations, it does reflect a commitment of the California Legislature to look to substance more than form. (See *People* v. *Walker* (1967) 247 Cal.App.2d 554, 562 [55 Cal.Rptr. 726].)

Where a declarant has a clear intent to make a statement "under penalty of perjury" as evidenced by those very words following his name at the top of the page and where the declarant submits that declaration to a court to influence the court to make an order based thereon, there is substantial evidence from which the jury would infer that the appellant was presenting his statements as true.

Appellant next urges the court to adopt the mistaken notion that only statements made under penalty of perjury (or by oath) in a situation where such oath is *required* may qualify as statements in violation of Penal Code section 118. Appellant recites the words "authorized or

required" but uses them to mean "required." Some cases seemingly support this view. (See *People* v. *Barajas* (1969) 273 Cal.App.2d 750, 751 [78 Cal.Rptr. 647]; *People* v. *White* (1954) 122 Cal.App.2d 551, 552 [265 P.2d 115]; *People* v. *Millsap* (1927) 85 Cal.App. 732 [260 P.378].)

Actually the word "authorized" in this context is a substitution for the word "material." Under the common law, and under statutory declarations of the common law, in order to constitute perjury, it was necessary that the facts stated be material, and also that the oath under which the statement was made be material, i.e., that the officer or tribunal before whom the oath was taken had 1) the authority to administer oaths and 2) jurisdiction of the subject matter of the oath. (*People* v. *Howard* (1896) 111 Cal. 655, 658 [44 P. 342]; *People* v. *Teixeira* (1922) 59 Cal.App. 598, 602-604 [211 P. 470]; Note (1938) 11 So.Cal.L.Rev. 309.) Where one has both the authority to administer oaths and the jurisdiction over the subject matter of the oath, it has reasonably been said that the oath is "authorized" as a matter of law. In a judicial proceeding the oath is material if the tribunal has jurisdiction over the subject matter and the person. (*People* v. *Howard, supra*, 111 Cal. at p. 658; *In re Clark* (1921) 54 Cal.App. 507 [202 P. 50]; accord *People* v. *Davidson* (1964) 227 Cal.App.2d 331, 334 [38 Cal.Rptr. 660].)

In *People* v. *Godines* (1936) 17 Cal.App.2d 721 [62 P.2d 787], the issue was raised by a woman convicted of perjury for statements made within a verified complaint she filed in order to obtain an annulment of her marriage. The court stated she attacked her conviction "by contending that, as the complaint could have been filed unverified, its verification was a voluntary, idle act, one of the consequences of which may not be a conviction of perjury. We find this contention supported neither by authority nor reason, and we are disinclined to remove further the sanctions of perjury from those who swear falsely by holding that one may with impunity verify a complaint which contains allegations known to be untrue." (*People* v. *Godines, supra*, 17 Cal.App.2d at p. 724.)

The court interpreted the word "authorized" to mean cases where the law does permit an oath and annexes some consequence to it. Therefore, where a party in a civil case files a verified complaint, thereby requiring the answer to be verified (by oath or under penalty of perjury), it would be anomalous to allow the complaining party to claim the statements

made were a voluntary act, free from the fear of possible perjury. (*Id.*, at pp. 725-726.)

The modern expression of the perjury law, Penal Code section 118, states in pertinent part: "Every person who, having taken an oath that he will testify, declare, ... truly before any competent tribunal, ... in any of the cases in which such an oath *may* by law of the State of California be administered ... and every person who testifies, declares, ... under penalty of perjury in any of the cases in which such testimony, declaration, ... *is permitted* by law of the State of California under penalty of perjury and willfully states as true any material matter which he knows to be false, is guilty of perjury." (Italics added.) The words "may" and "is permitted" are permissive words, not words of requirement.

All motions must be made by the filing of a typewritten motion, stating the grounds of the motion, and must be accompanied by points and authorities, "and if the motion is based on matters not appearing of record *by affidavits or other evidence* in support thereof." (Cal. Rules of Court, rule 104(a), italics added; Code Civ. Proc., § 2009; see Witkin, Cal. Evidence (2d ed. 1966) § 628, p. 588.) Motions made subsequent to judgment are not exempted from this procedure. (cf. Pen. Code, § 1201.5; City & County of San Francisco Super. Ct. rule 17.)

Penal Code section 1203.4 provides a method by which a person who has successfully fulfilled his conditions of probation, may have the charges dismissed. "The probationer may make such application and change of plea in person or by attorney or by probation officer authorized in writing." (Pen. Code, § 1203.4.) In order for a court to consider such a motion, it must have facts outside the record. The court may take additional evidence, i.e., swear in a witness, or accept a declaration under penalty of perjury, or a probation officer's investigative report. Without one of those three items, the court would have no facts before it upon which to make a determination whether to grant or deny the motion. There is nothing in section 1203.4 which indicates it is an ex parte motion; therefore, the prosecution has a right to object, and to cross-examine the proffered evidence, or even offer rebuttal evidence. The prosecution would also have the choice of not contesting the declaration and permitting the court to rule on the basis of the papers alone. However, in making such a decision, the prosecution would be relying on the fact that the statement was made under penalty of perjury. To allow a declarant to obtain favorable treatment by a promise of statements made under penalty of perjury while harboring the intent to

withdraw that indicia of truthfulness if put to the test is to invite the prosecution to act the obstructionist with every statement made under penalty of perjury. There are, therefore, consequences to the statements made, significant enough to pass the requirement in *Godines, supra*, 17 Cal.App.2d 721.

There can be no question but that the court has the jurisdiction to take evidence in the matter and has jurisdiction of the subject matter and the person, and that a declaration made under penalty of perjury in support of a Penal Code section 1203.4 motion is a declaration for which an oath is "authorized," i.e., one which is "permitted by law."

Appellant again raises the issue of substantial compliance with the conditions of his probation. The jury did not believe his story that he had paid $27,000 in cash or that Mr. Silvestri had waived his right to receive the balance of $22,000 in cash. The discussion under "preparation of false documentary evidence" is applicable here.

## Corroboration

■ Penal Code section 1103a proscribes the conviction for perjury based upon the testimony of only one person in contradiction of the accused. Appellant asserts that there was no such corroboration.

The testimony of Mrs. Silvestri supports the testimony of Mr. Silvestri that he received only $5,000 of the $27,000 due him in restitution and made no loan to appellant or San Diego Portland Cement. The testimony of appellant's secretary corroborates the Silvestris' testimony; she heard appellant tell the Silvestris to look at the $5,000 as a down payment with the balance due, and appellant told her he wanted to pay the Silvestris the money he owed them, but he could not at that time. A loan was not mentioned to her. Appellant's argument that there is no corroboration to show he was lying when he stated under penalty of perjury that he had discharged all the obligations of his probation, i.e., he paid the Silvestris restitution of $27,000, is without merit.

In reviewing the whole record in the light most favorable to the judgment below, as we must, we conclude that it discloses substantial evidence in support of the jury verdict finding appellant guilty beyond a reasonable doubt of violation of Penal Code sections 134 and 118 and that the documents upon which the charges are based are legally sufficient.

### The Instruction on Perjury

The court gave the following perjury instruction which was requested by the prosecution and objected to by appellant: "Defendant is charged in the information with the commission of the crime of perjury, a violation of section 118 of the Penal Code.

"Every person who makes a declaration 'under penalty of perjury' in support of his motion to withdraw his *nolo contendere* plea and for dismissal of criminal charges pursuant to § 1203.4 Penal Code, and willfully states as true any material matter which he knows to be false, is guilty of the crime of perjury.

"In order to prove the commission of the crime of perjury, each of the following elements must be proved:

"1. That a person declared under penalty of perjury that the statements contained in the declaration were true and correct; *or that the person declared under penalty of perjury under circumstances where it can be presumed that the declarant was claiming that it was true and correct*;

"2. That the declaration under penalty of perjury was permitted by law;

"3. That such person declared as true a matter which he knew was false; and

"4. That such a person had the specific intent to declare falsely.

"If you find that the defendant made the statement as charged, such statement was material matter within the definition of perjury read to you." (CALJIC No. 7.21 (1979 rev.); italics indicate modification.) Instructions on willful intent (CALJIC No. 7.24), and lack of knowledge of materiality is no defense (Pen. Code, § 123) were also given.

Appellant argues that the mere inclusion of the word "presumed" in an instruction reverses the presumption of innocence and acts to lessen the People's burden of proof beyond a reasonable doubt resulting in prejudice per se to appellant.

■ The word "presume" as given in the modification is indistinguishable from the word "infer." The jury was given the standard

introductory instructions, among them CALJIC No. 1.01, that they were not to single out any certain sentence and ignore others and that they were to consider all instructions as a whole. The standard definition of evidence was given, CALJIC No. 2.00 (1979 rev.), explaining "[C]ircumstantial evidence is evidence that, if found to be true, proves a fact from which an inference of the existence of another fact may be drawn. An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts established by the evidence."

The suspect instruction on the elements of perjury, as given, recites one of the elements which can be proved by direct evidence or which can be proved by circumstantial evidence, i.e., the added phrase was directed to the omission of the words "that the following statements are true and correct" from the declaration. The added phrase accurately reflects the holding in *Pacific Air Lines, Inc.* v. *Superior Court, supra,* 231 Cal.App.2d 587, that an averment of truth need not be included in a statement made under penalty of perjury where it can be inferred from the circumstances that the statements are being presented as true facts.

"While modification of the standard instructions is always within the discretion of the trial court, for indeed such instructions are themselves optional within the discretion of the trial court, any modification in those instructions must conform with the applicable law. [¶] It is an elementary principle of law that before a jury can be instructed that it may draw a particular inference, evidence must appear in the record which, if believed by the jury, will support the suggested inference." (*People* v. *Hannon* (1977) 19 Cal.3d 588, 597 [138 Cal.Rptr. 885, 564 P.2d 1203].)

Evidence does appear in the record before us. The declaration begins "Morgan Cabot Laws, under penalty of perjury, declares: . . ." and was filed with the court for modification of sentence. Appellant testified that he believed he had satisfactorily completed all conditions of probation. These are facts from which a reasonable person could infer or presume that the declarant was presenting the statements written therein as true.

Appellant is mistaken in assuming that if the instruction were error it would require an automatic reversal. Even where an instruction is specifically disapproved, if a "close review of the record reveals that it is

not reasonably probable that a result more favorable to the appealing party would have been reached in the absence of error," the conviction must be affirmed. (*People* v. *Brigham* (1979) 25 Cal.3d 283, 292 [157 Cal.Rptr. 905, 599 P.2d 100].)

### Circumstances in Aggravation for Upper Term Sentence

■ The court found as circumstances in aggravation "the defendant in this case illegally interfered with the judicial process on two separate occasions, presented a false declaration that he complied with the provisions of summary probation. Moreover, prepared and presented a false receipt for the victim. [¶] This alone in the Court's view is sufficient to warrant the imposition of the upper term and constitutes aggravation." The court was relying on California Rules of Court, rule 421 (a)(6) for this ruling, although rules 421 (a)(7) and 421 (b)(2) also apply.[4] No circumstances were offered in mitigation. When enunciating "facts and reasons for selecting the upper . . . term," the trial judge must "include a concise statement of the *ultimate facts* which the court deemed to constitute circumstances in aggravation . . . justifying the term selected." (Cal. Rules of Court, rule 439(c) italics added.) Of most importance, the Judicial Council's rules state: "Selection of the upper term is justified only if, considering the *entire record* of the case, including the probation officer's report, other reports properly filed in the case and other competent evidence, circumstances in aggravation are established by a preponderance of the evidence and outweigh circumstances in mitigation." [Italics added.] (Cal. Rules of Court, rule 439(b).).

Appellant contends that illegal interference with the judicial process is an element of the charges for which appellant stands convicted and therefore may not be used to aggravate. However, the particular means

---

[4]Penal Code section 1170, subdivision (a)(2), provides in part: "In sentencing the convicted person, the court shall apply the sentencing rules of the Judicial Council...."

Rule 421, California Rules of Court, provides in relevant part, that circumstances in aggravation include facts relating to the crime, including the fact that the defendant illegally interfered with the judicial process (421(a)(6)) and the fact that the defendant was convicted of other crimes for which consecutive sentences could have been imposed but for which concurrent sentences were imposed (421(a)(7)); circumstances in aggravation also include facts relating to the defendant, including the fact that the defendant's prior convictions as an adult are of increasing seriousness (421(b)(2)).

Rule 409 states "Relevant criteria enumerated in these rules shall be considered by the sentencing judge, and shall be deemed to have been considered unless the record affirmatively reflects otherwise."

by which an element of the crime is carried out is not an element of the crime itself. (*People v. Dixie* (1979) 98 Cal.App.3d 852, 856 [159 Cal.Rptr. 717]; see *People v. Ramos* (1980) 106 Cal.App.3d 591, 601-602 [165 Cal.Rptr. 179].)

Neither Penal Code section 118 nor 134 requires actual interference with the judicial process. Whether either act does result in interference with the judicial process is immaterial. (See *People v. Murphy* (1870) 39 Cal. 52, 55; *People v. Dixie, supra*, 98 Cal.App.3d 852, 856.)

In the case at bar, as a direct result of appellant's filing the false paper (receipt) and the perjured declaration, the court had allowed appellant to withdraw his previously entered plea, had reduced the felony charge to a misdemeanor, and had dismissed the case against appellant. The trial court acted within its discretion in finding circumstances in aggravation to support an upper base term.

### Bail on Appeal

██ Appellant asserts that the court's refusal to grant bail pending appeal was an abuse of discretion. In reviewing the likelihood of flight, the court may consider 1) the defendant's ties to the community, including employment, duration of residence, family attachments and property holdings; 2) defendant's record of appearances for past criminal matters; 3) severity of sentence; and 4) danger of continued criminal conduct. (*In re Podesto* (1976) 15 Cal.3d 921, 934-935 [127 Cal.Rptr. 97, 544 P.2d 1297].)

Appellant states "[t]here is no support in the record for the statement that he 'had connections outside the country.'" On the contrary, there is substantial information from which the judge reasonably inferred appellant had closer ties to Mexico than to the United States. Appellant set out those personal and business ties in a letter to his former attorney and that letter was attached to his declaration filed with the court. The sureties surrendered appellant the morning of the sentencing with a letter stating they feared he might not appear. In addition, during an earlier case, appellant had failed to appear on his trial date and had absented himself from the court for two and one-half years.

The trial judge exercised his discretion within the *Podesto* guidelines when he stated his reason for denial of bail during appeal was "good

cause to conclude with [appellant's] connections outside the country that he wouldn't be present when he had to be."

The judgment is affirmed.